COMMONWEALTH of Pennsylvania by Gerald J. PAPPERT, in his capacity as Attorney General of the Commonwealth of Pennsylvania, Plaintiff

v.

TAP PHARMACEUTICAL PRODUCTS, INC.; Abbott Laboratories; Takeda Chemical Industries, LTD.; AstraZeneca PLC; Zeneca, Inc.; AstraZeneca Pharmaceuticals LP; AstraZeneca LP; Bayer AG; Bayer Corporation; GlaxoSmithKline, P.L.C.; SmithKline Beecham Corporation; Glaxo Wellcome, Inc.; Pfizer, Inc.; Pharmacia Corporation; Johnson & Johnson; Amgen, Inc.; Bristol–Myers Squibb Company; Baxter International Inc.; Aventis Pharmaceuticals, Inc.; Boehringer Ingelheim Corporation; Schering–Plough Corporation; Dey, Inc., Defendants.

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2004.
Decided Feb. 1, 2005.

626

Donald E. Haviland, Jr., Philadelphia, for plaintiff.

John Charles Dodds, Philadelphia, for defendant, Pfizer, Inc.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBILIRER, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

The Commonwealth, through its Attorney General, has filed a Complaint against numerous pharmaceutical companies asserting generally that the companies have engaged in unfair and deceptive marketing schemes and conspiracies that have resulted in overcharging Pennsylvania consumers for the companies' products. In response, the companies have filed the preliminary objections we now consider. For the reasons stated below, we sustain the Defendants' preliminary objection asserting that the Complaint fails to plead facts with the specificity required under Pa. R.C.P. No. 1019(a) and (b). We will dismiss the Complaint without prejudice and allow the Plaintiff to submit an amended complaint within thirty days of the filing of this opinion. We also will sustain the preliminary objection filed by Takeda Chemical Industries, LTD (Takeda), challenging the Court's authority to exercise personal jurisdiction over that Defendant. Because we are sustaining the preliminary objection to the sufficiency of the Complaint's factual averments, we will not consider the remaining objections.

The Complaint avers, inter alia, the following pertinent facts. The Commonwealth purchases drugs for various Commonwealth-related entities, reimburses parties for the purchase of the companies' pharmaceuticals, and presents itself as acting as parens patriae on behalf of Commonwealth citizens who individually purchase the companies' pharmaceuticals. The companies sell their products or give free samples to intervening purchasers, such as doctors, at a certain price called the "acquisition" price. These initial purchasers then sell the purchased products to their customers, patients, for example, at what is called the "Average Wholesale Price" or AWP. The companies fix the amount of the AWP for each product, and the government, or other parties responsible for reimbursement, rely upon the AWP as the measure of reimbursement. Because the AWP is set higher than the acquisition cost, the difference, which the Plaintiff refers to as the "spread," results in a windfall for the intermediary purchaser. The Plaintiff alleges that, by ensuring a spread, the intermediary purchaser has an incentive to buy a company's pharmaceuticals. The initial purchaser enjoys the windfall, and the companies thereby have increased business. The Plaintiff provides an example of the resulting competition: When a company sets a greater spread than a competitor's product, the company with the greater spread has a greater market share because more intermediary purchasers buy, knowing that they will receive a greater benefit. Similarly, when a company provides intermediary users with free samples, an intermediary purchaser has a greater incentive to prescribe a company's product. The Plaintiff alleges that the companies provide additional incentives such as free trips, consulting opportunities, gifts, and cash payments.

The Plaintiff contends that the companies fraudulently concealed these allegedly improper practices by controlling the AWP methodology and by concealing the acquisition costs and inducements to intermediary purchasers described above. The Plaintiff further asserts that, although some of the companies pleaded guilty to

federal criminal charges arising from this conduct, the Commonwealth and its citizens have not recovered all of the losses they incurred as a result of the companies' actions. The Complaint relies upon four theories for recovery: unjust enrichment, misrepresentation or fraud, civil conspiracy, and violations of the Unfair Trade Practice and Consumer Protection Law (UTPCPL).[1]

The companies' preliminary objections present the following issues: (1) do the factual averments satisfy the requirement for specificity under Pa. R.C.P. No. 1019(a) and (b); (2) has the Plaintiff stated claims for which relief can be granted; (3) does the Plaintiff lack standing with regard to some of the claims; (4) does a pending action in Massachusetts warrant the grant of a stay in this proceeding; (5) does federal law preempt the Plaintiff's claims brought on behalf of ERISA[2] beneficiaries; and (6) does the Court lack personal jurisdiction over some of the company Defendants?[3] We will address first the objections concerning personal jurisdiction.

### A. Personal Jurisdiction

### I. Personal Jurisdiction as to Takeda

#### a. General Jurisdiction

■ Pennsylvania courts recognize two statutory bases for exercising personal jurisdiction over a non-resident corporation. Section 5301(a)(2) of the Judicial Code, 42 Pa.C.S. § 5301(a)(2), permits Pennsylvania courts to exercise general personal jurisdiction over a non-resident corporation if (1) the corporation qualifies as a foreign corporation under the laws of the Commonwealth; (2) the corporation consents to jurisdiction; or (3) the corporation carries

on a continuous and systematic part of its business under the laws of the Commonwealth. A court of this Commonwealth may exercise jurisdiction over a nonresident defendant under this provision if the defendant's activities in Pennsylvania are "continuous and substantial" even if the cause of action is not related to the defendant's activities in the state. *Bork v. Mills,* 458 Pa. 228, 231–232, 329 A.2d 247, 249 (1974); *Efford v. Jockey Club,* 796 A.2d 370, 373 (Pa.Super.2002).

■ We conclude that the Court cannot exercise general jurisdiction over Takeda. Even if the Plaintiff's averments are true, they could not support a conclusion that Takeda has carried on a continuous or systematic part of its business in Pennsylvania. Based upon facts averred in Takeda's preliminary objection, Takeda is not a Pennsylvania corporation; it does not have bank accounts or rent or own office space in the Commonwealth. The Plaintiff points to certain documents it submitted in support of its jurisdictional arguments— one indicating that a Takeda employee accompanied a TAP sales representative visiting Pennsylvania purchasers of Takeda products, and another describing a Takeda employee that corporation "seconded" to TAP. However, the totality of the circumstances here are insufficient to establish that Takeda conducts a part of its business in Pennsylvania in a continuous and systematic manner.

#### b. Specific Jurisdiction

■ Section 5322 of the Judicial Code, 42 Pa.C.S. § 5322, known as the "long-arm statute," describes circumstances under which courts may exercise specific jurisdic-

---

1. Act of December 17, 1968, P.L. 1224, *as amended,* 73 P.S. §§ 201–1——201–9.3.

2. Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461.

3. These include Takeda Chemical Industries, Ltd., Baxter International, Inc., Boehringer Ingelheim Corporation, AstraZeneca PLC, and Bayer AG.

tion over a non-resident. Specific jurisdiction "is focused upon the particular acts of the defendant that gave rise to the underlying cause of action." *Efford,* 796 A.2d at 373. Section 5322 provides for the exercise of jurisdiction when a non-resident's conduct falls within the terms of subsection (a). However, additionally, and co-extensively, subsection (b) requires that "our courts' exercise of jurisdiction under the Long Arm Statute conforms with federal Constitutional requirements of due process." *Derman v. Wilair Services, Inc.,* 404 Pa.Super. 136, 590 A.2d 317, *petition for allowance of appeal denied,* 529 Pa. 621, 600 A.2d 537 (1991). Subsection (b) provides:

> In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

■ Takeda's objection to this Court's exercise of specific personal jurisdiction rests on due process grounds. Accordingly, we will consider whether the Plaintiff's averments, and the documentary submissions upon which it relies, are sufficient to satisfy due process concerns. As first established in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), a state court may only exercise personal jurisdiction over a non-resident defendant if "minimum contacts" exist between the forum state and the defendant. A defendant's contacts must be of a sufficient quality as to not offend notions of fair play and substantial justice. *Id.* In the well-known case of *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court concluded that an Oklahoma court could not exercise personal jurisdiction over a nonresident automobile retailer and wholesaler from whom the plaintiffs purchased a vehicle, because the circumstances showed no meaningful contacts between those defendants and the forum state.[4] In reaching that conclusion, the court injected the notion that, while foreseeability is a factor in analyzing the due process issue, courts should consider not simply whether a product that finds its way to another forum might result in injury, but rather whether a defendant's conduct with regard to and its connection to the forum state is such that a defendant can reasonably anticipate being haled into court. In resolving the question of whether a party can reasonably anticipate being sued in a state, a court must consider whether a defendant acted purposefully in directing its activities at the forum state or in availing himself of the privileges of conducting activities in the state, and invoking the benefits and protections of the forum's laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ If a court determines that a party can reasonably anticipate being haled into court—the purposeful availment analysis — the next inquiry is whether requiring nonresident defendants to appear in the forum is reasonable and fair. As our Supreme Court summarized in *Kubik v. Letteri,* 532 Pa. 10, 18, 614 A.2d 1110, 1114

---

4. The Court noted that the defendants did not conduct activities in the forum, did not close sales or perform services there, did not avail themselves of protection of the forum's laws, and solicited no business there. Nor did they advertise or seek to serve the forum state's market.

(1992) (citing *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174): .

> Factors to be considered include (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and (5) the shared interest of the several states in furthering fundamental substantive social policies.

In accordance with *Burger King,* the Court in *Kubik* recognized the distinction between the two requirements, noting that, even where a party does have the minimum contacts necessary for the exercise of jurisdiction, fair justice may not warrant accepting jurisdiction.

■ In approaching this case, we begin with an examination of the alleged contacts Takeda has with the Commonwealth. We first underscore the fact that Takeda does not itself sell, market, or distribute its products in Pennsylvania. The Plaintiff asserts that Takeda executives have established the necessary minimum contacts with the state by virtue of visits to the state by Takeda executives and employees. The documentary evidence the Plaintiff has submitted, while suggesting Takeda's interest in marketing its product, does not definitively show that those visits concerned the underlying scheme or conduct alleged to have harmed the Commonwealth and its consumers. Contrary to the Plaintiff's argument, we cannot infer that the purpose of the visits was to enable or encourage the alleged wrongful conduct of TAP. The Plaintiff also contends that the attendance at a TAP sales meeting by two Takeda employees, and the act of one Takeda employee in accompanying a TAP sales representative, provide the minimum contacts necessary for the assertion of jurisdiction.

As noted by the Court in *Burger King,* if the nature and quality of alleged contacts of a party with the forum state create only an attenuated connection, the contacts will lack the quality necessary to confer jurisdiction. Based upon the evidence the Plaintiff has submitted, we conclude that the contacts alleged to exist are too attenuated to satisfy the due process requirements for personal jurisdiction. We cannot infer that the contacts that did occur relate to the harm that the Plaintiff alleges to have occurred. Although the Plaintiff asserts that those contacts cannot be "random" or "fortuitous," there is no definite thread connecting the Takeda employee conference or trade show visits to the harm alleged. As to the involvement by Takeda employees at a TAP sales meeting and the Takeda employee accompanying the TAP sales representative, those are three apparently isolated incidents. These actions alone are insufficient to establish minimum contacts.

The Plaintiff, relying upon a decision from the Arizona Supreme Court, *A. Uberti and C. v. Leonardo,* 181 Ariz. 565, 892 P.2d 1354, *cert. denied,* 516 U.S. 906, 116 S.Ct. 273, 133 L.Ed.2d 194 (1995), argues that Takeda's act of seeking to market its products to the entire United States, through its agreements with its subsidiary, TAP, is sufficient to satisfy the minimum contacts requirement.[5] Essentially, the Plaintiff contends that Takeda's conduct in creating TAP as a marketing and distribution system for Takeda's products estab-

---

**5.** Takeda argues that the "stream of commerce" analysis has generally been confined to product liability and tort cases, and not economic cases such as this; however, we see no reason, nor has Takeda offered one, as to why the stream of commerce analysis should not apply to economic harm as well as product liability cases.

lishes the minimum contacts necessary, because through the system Takeda has created, Takeda has sought purposefully to penetrate the market throughout the United States.

In *A. Uberti*, the court considered whether an Italian manufacturer of a replica gun, that allegedly lacked sufficient safety features and that accidentally discharged, killing a child, could be haled into an Arizona court. The trial court that had originally presided over the case made factual findings concerning the manufacturer's contacts with Arizona. The court noted that the manufacturer produced a catalog printed in English that the manufacturer's distributor disseminated in the United States, that the guns were designed to appeal to consumers in the western part of the United States, that the manufacturer had at least eight distributors in the United States, that the manufacturer had exported at least 10,000 firearms to the United States within a four-year period, that the packaging and instructions included information about the Italian manufacturer, and that the manufacturer's products were sold in Tucson gun stores, which regularly carried the products. In *A. Uberti*, the court looked to the United States Supreme Court's decision in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

In relying on the stream of commerce analysis developed in *Asahi*, the Arizona court recognized that the Supreme Court was divided in its reasoning concerning minimum contacts. Four justices, led by Justice O'Connor believed that mere foreseeability that a manufacturer's product will find its way into the stream of commerce is insufficient to confer personal jurisdiction. Rather, those four justices would also require facts showing some

substantial connection between the defendant manufacturer and the forum. 480 U.S. at 112, 107 S.Ct. 1026. Justice Brennan, joined by three other justices, opined that, where a manufacturer is aware that its product has entered a market through the ordinary channels of the stream of commerce, and knows that it is being marketed in that forum, but the product does not arrive in the forum as a result of unpredictable flows in the market, then additional involvement by a manufacturer is not necessary to satisfy the minimum contacts component of the due process requirement.

As the Plaintiff points out, Justice O'Connor listed various examples of conduct that create the required "substantial connection" between a foreign manufacturer and the forum state: "Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." 480 U.S. at 112, 107 S.Ct. 1026. Justice O'Connor, in setting forth this standard, noted that Asahi did no business in California, and had "no office, agents, employees, or property in California. It did not create, control, or employ the distribution system that brought its valves to California." 480 U.S. at 112, 107 S.Ct. 1026.

The Plaintiff, arguing that Takeda did create and control the distribution system, also relies upon a case cited by Justice O'Connor in *Asahi, Hicks v. Kawasaki Heavy Industries*, 452 F.Supp. 130 (M.D.Pa.1978). In *Hicks*, the federal district court concluded that it had jurisdiction over a nonresident manufacturer that had used a subsidiary to distribute its product. Like Takeda in this case, the

parent company, Kawasaki Heavy Industries, argued that it never made a sale in Pennsylvania, never solicited any business in Pennsylvania, never received a certificate of authority to conduct business in the state, and did not directly ship goods to Pennsylvania. However, the court found persuasive the fact that Kawasaki Heavy Industries owned 96 percent of the shares of stock of the distributor, Kawasaki Motors Corp, U.S.A., and that at least one person served on the boards of both companies. The Court stated: "Most significant is the fact that there are 55 Kawasaki retail dealers in Pennsylvania supplied by the exclusive sales agent. Although the motorcycles are sold f.o.b. Japan to Kawasaki Motors Corp., U.S.A., it is inconceivable that Kawasaki Heavy Industries, Ltd., is not aware that a significant number of its motorcycles reach Pennsylvania and that this activity would have consequences in the state." 452 F.Supp. at 134.

Under Justice Brennan's reasoning in *Asahi*, we could find that Takeda had the necessary minimum contacts to satisfy due process, because it is reasonable to conclude that Takeda knew that its products would enter the market in Pennsylvania, and that its products would enter the state in a manner that was not serendipitous or unpredictable.[6] However, although this case is similar to *Hicks* in that Takeda maintains a degree of control over the distribution system, TAP, unlike the Kawasaki parent company in *Hicks*, which controlled 96% of the distribution subsidiary, Takeda controls only 50 percent of TAP. While Takeda's ownership interest in TAP is significant, that percentage does not constitute even a bare majority of ownership of TAP. We cannot presume that Takeda's 50 percent interest in TAP creates the substantial connection necessary

under Justice O'Connor's reasoning in *Asahi* or satisfies the purposeful availment analysis described by our Supreme Court in *Kubik*. Although we disagree with Takeda's position that the Plaintiff has not submitted affidavits or documents showing that Takeda was interested in penetrating the American market (which exhibits suggest that Takeda has directed its employees to participate in marketing and sales activities in Pennsylvania), we conclude that the Plaintiff has not satisfactorily established that Takeda's connections to TAP and the Commonwealth are not "random," "fortuitous" or "attenuated." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. Nor has the Plaintiff shown that TAP's conduct as a marketer and distributor has not been unilateral. *Id.; Skinner v. Flymo*, 351 Pa.Super. 234, 505 A.2d 616, 620 (1986)

■ We now address the Plaintiff's argument that the exercise of jurisdiction is appropriate under its conspiracy theory. As noted by Takeda, bare assertions of a conspiracy connection are insufficient to justify the exercise of personal jurisdiction. The attendance by Takeda employees at a TAP regional sales meeting and the accompaniment of TAP sales representatives by a Takeda employee do not overcome this initial burden on the Plaintiff. We think Takeda would reasonably admit it has an interest in TAP's activities; however, the allegations are simply insufficient to establish that Takeda participated in, or knew of, the alleged conspiracy. Accordingly, we reject this argument.

■ Lastly, we agree with Takeda that the Plaintiff has not asserted sufficient evidentiary facts for the Court to exercise jurisdiction under a theory of veil piercing or alter ego. The Plaintiff contends that

---

**6.** To assume otherwise would require the absurd conclusion that Takeda believed its subsidiary was nothing more than a theoretical distribution and marketing company.

we can assert jurisdiction over Takeda because that parent company essentially controls TAP. As noted above, Takeda controls only 50 percent of TAP. While the parent organizations, Takeda and Abbot surely appoint executives to TAP who have a business relationship with the parents, either as employees or executives, and while Abbot and Takeda may have identical interests in TAP's activities, the fact remains that neither parent company may exert exclusive control over TAP. As Takeda notes, non-exclusive control, and more specifically, joint control, is inconsistent with the standard federal courts have set down in determining whether courts, for jurisdictional purposes, may pierce the corporate veil. *In re Lupron Marketing and Sales Practices Litigation,* 245 F.Supp.2d 280, 292, n. 27 (D.Mass.2003).[7]

Because we conclude that the Plaintiff has not established that minimum contacts exist between Takeda and the Commonwealth, we need not address the second part of the due process analysis——whether haling Takeda into this forum to defend itself would offend "traditional notions of fair play and substantial justice." *International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154.

## II. Personal Jurisdiction as to Baxter

Baxter's challenge to the Complaint on personal jurisdiction grounds relies upon the affidavit of its Associate General Counsel, Thomas L. Aldrich, who states therein that he has been employed by Baxter since 1998, has held his current title since 2002, has conferred regularly with Baxter's officers, and is familiar with Baxter's manufacture, sale, and distribution of its products. Mr. Aldrich asserts that Baxter does not conduct business within the Common-

wealth. Baxter has also included a verified statement of Jan Stern Reed, Baxter's Corporate Secretary. Stern confirms Mr. Aldrich's statement, and also states that Baxter has never marketed, advertised, packaged, or placed into the stream of commerce, any of its products in Pennsylvania, or elsewhere in the United States. Further, Baxter does not maintain any offices in Pennsylvania, or rent or own real or personal property in the Commonwealth, does not maintain bank accounts in the state, and does not pay taxes in the state.

The Plaintiff contends that Baxter International is a Delaware corporation, with headquarters in Illinois, and additionally, and apparently pivotally in the Plaintiff's view, encompasses subsidiary companies, namely Baxter Healthcare Corporation and Immuno—U.S., Inc., which engage in the manufacture, distribution, marketing, and selling of prescription drugs to Pennsylvania consumers. Baxter, the Plaintiff contends, purposefully markets its products to the entire United States through subsidiary distributors.

For the reasons stated in our discussion of our general jurisdiction over Takeda, we conclude that we cannot exercise general personal jurisdiction over Baxter. The Plaintiff does not contest the facts contained in Baxter's supporting affidavit and statement. Accordingly, Baxter's business activity in this state cannot be said to be "continuous and systematic."

■ With regard to our exercise of jurisdiction under our long arm statute, 42 Pa.C.S. § 5322, the Plaintiff sets forth the same reasoning it provided with regard to Takeda, specifically arguing that Baxter

---

7. We find similarly unpersuasive the Plaintiff's argument regarding Takeda's participation in TAP's guilty plea in a criminal proceeding against TAP. Takeda, while an in-terested entity as TAP's parent company, suffered *no corporate consequences itself as a result of that proceeding, was not prosecuted, paid no fines, and naturally, entered no plea.*

has marketed its products through a subsidiary. Although the averments that the Plaintiff has made in its Complaint are minimal, the documentary support for its claim that Baxter is involved in the distribution and marketing of its product throughout the United States strongly indicates that Baxter has purposefully availed itself with regard to the Commonwealth. The exhibits the Plaintiff has submitted in support of its personal jurisdiction argument suggest that Baxter knew of, and provided input regarding, the setting of AWP and sales to intermediaries. These documents support the Plaintiff's position, and, if proven, would mean that Baxter International did create contacts of such quality to support a conclusion that minimum contacts exist. Further, in contrast to Takeda, Baxter does maintain corporate offices in the United States. In considering the question of whether it is fair to hale Baxter into a Pennsylvania court, we note that the Commonwealth has a strong interest in the outcome of this case—the economic harm alleged could be extreme. We believe that exercising jurisdiction under these circumstances would not offend notions of reasonableness and fairness. If the Plaintiff is successful in its theory of the underlying merits, we could conclude that the scheme the individual Defendants established for the sale and distribution of their products created a system whereby end purchasers unknowingly subsidized corporate profits. Baxter, which is registered as a corporation in Delaware, would not be placed in the position of defending itself in a foreign country or even a remote state. Accordingly, we conclude that the Court may exert personal jurisdiction over Baxter. However, as more fully discussed below, the Plaintiff's amended complaint should include additional and sufficient averments concerning Baxter's conduct.

## III. Personal Jurisdiction as to Boehringer Ingelheim

Boehringer Ingelheim Corporation (BIC) is a Nevada corporation with headquarters in Connecticut. As with Takeda and Baxter, the Plaintiff contends that BIC, through and in consort with its subsidiaries, has the required minimum contacts with the state to provide this Court with personal jurisdiction over BIC. Neither the averments in the Complaint nor the documents submitted by the Plaintiff support the conclusion that BIC has continuously or systematically conducted business in the state such that would permit this Court to exercise general jurisdiction over BIC.

As BIC contends, the courts have held that the act of a subsidiary in conducting business in a state is insufficient in itself to confer jurisdiction. The Plaintiff avers in its Complaint that BIC includes a number of subsidiaries that manufacture, distribute, market, and sell its prescription drugs. In contrast to the Defendants discussed above, the Plaintiff asserts only that BIC's subsidiaries manufacture, sell, and manufacture drugs that are sold in the Commonwealth. The Plaintiff asserts in its memorandum in opposition to BIC's jurisdictional objections that BIC took an active role in the alleged scheme, and was integrally involved in the scheme. Unlike the documents the Plaintiff has submitted in support of its jurisdictional claim with regard to Baxter, the Plaintiff has not supplied any documentary evidence that shows that BIC had direct involvement with the creation of the spread scheme at issue. However, the Plaintiff contends that BIC controls all of the shares of the subsidiary Defendants. Thus, from a factual perspective, if this contention is true, the relationship between BIC and the subsidiary BIC defendants that apparently do market and sell pharmaceuticals in the

Commonwealth is strikingly different from the relationship between Takeda and TAP. As noted above, Takeda owns only 50 per-cent of TAP, whereas, the Plaintiff con-tends, albeit only in its memorandum, that BIC controls all of the shares of its subsid-iaries.

Accordingly, if the Plaintiff were to amend its complaint to contain more spe-cific averments regarding the relationship between the parent and subsidiaries, the relationship could very well satisfy the minimum contacts recognized by the feder-al court in *Hicks*. Indeed, the Plaintiff has asserted that BIC has failed to comply with discovery requests. If BIC does so comply and the Plaintiff sets forth more specific facts regarding the relationship between the parent and subsidiaries, this Court could exercise jurisdiction over BIC. Accordingly, this Court will permit the Plaintiff to amend its Complaint with re-gard to BIC to plead such facts.[8]

### B. Adequacy of Pleadings

■ Although each Defendant has filed preliminary objections to the Complaint, the objections are essentially the same. First, Defendants contend that the aver-ments in the Complaint lack the specificity that the Pennsylvania Rules of Civil Proce-dure require. Pertinent to this issue is Rule 1019(a) and (b). Rule 1019(a) pro-vides that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." The rule requires a plaintiff to plead all the facts that he must prove in order to achieve recovery on the alleged cause of action. The pleading must be sufficiently specific so that the defending party will know how to prepare his defense. *Depart-ment of Transportation v. Shipley Humble Oil Co.*, 29 Pa.Cmwlth. 171, 370 A.2d 438 (1977).

■ We note initially that the Com-plaint does not specify facts pertaining to the relationships between the various groups of sub-respondents, i.e., parent—subsidiary companies. The Complaint does not allege with specificity the acts between those subsidiaries and their spe-cific parts in the allegedly improper con-duct. As noted by the Defendants, the Complaint does not fully describe the in-jured parties, and refers to injured parties the Complaint does not name. The Defen-dants could not be expected to defend adequately claims against them when the complaint fails to aver facts necessary for that defense.

The Defendants have pointed out vari-ous aspects of the Complaint that require embellishment in order to satisfy the Rule: (1) how have other proceedings failed to compensate the Commonwealth fully; (2) which manufacturers used certain methods to achieve certain reductions in acquisition costs, and which drugs were involved; (3) how the Defendants' prices were not legal-ly permissible and how the Defendants misled the Plaintiff and those it represents into believing that they were paying a legally permissible price. Looking at the individual causes of action provides a sense of how the Complaint lacks specificity.

We remind the Plaintiff that Pennsylva-nia is a fact pleading, rather than notice, state. Thus, the pleadings should conform

---

8. Following oral argument in this matter, two additional Defendants, AstraZeneca PLC and Bayer AG, filed preliminary objections, in-cluding challenges to the Court's power to exercise personal jurisdiction. Based on our disposition of the Defendants' preliminary ob-jections to the sufficiency of the Complaint under Rule 1019, and our consequential dis-missal of the Complaint, we will deny these two Defendants' objections to personal juris-diction. Assuming that the Plaintiff files an amended complaint, these Defendants may renew their objections at that time.

to the elements necessary to state a cause of action. For example, with regard to the unjust enrichment claim, the parties dispute the nature of the benefit allegedly bestowed on the Defendants for which the Plaintiff seeks to recover, that is, whether the benefit must be bestowed directly or indirectly. Without passing on the merits of either position, we note that the Complaint does little to shed light on the actual nature of the transactions, such that it is impossible to discern from a factual perspective the precise nature of the conduct at issue.

With regard to the Plaintiff's claim alleging fraud or misrepresentation, under Pa. R.C.P. No. 1019(b), a party asserting such a cause of action must aver such claims with particularity. We agree with the Defendants that the Plaintiff has failed to allege facts pertaining to its claims of fraud with adequate specificity. With regard to the specific drugs at issue, the Defendants assert that the Complaint does not specifically state which drugs manufactured by the Defendants are involved with the allegedly fraudulent scheme. Although the Complaint does list the drugs that each manufacturer produces, the parts of the Complaint addressing the fraud simply aver that the Defendants fraudulently developed the scheme to increase the market for their drugs. Rule 1019(b) requires more. In order for the Court properly to consider the fraud claims, and in order for the Defendants to know how to defend themselves, the Plaintiff must describe with particularity the

precise acts the Defendants took with regard to their specific products. Simply using the broad language suggesting that all Defendants manipulated the AWP or provided free samples with regard to drugs they manufacture or distribute is not enough. Although the Plaintiff has submitted documentary evidence that substantiates its claims, the pleadings fail to reflect the information contained in those documents. As noted by the Defendants, the Plaintiff generally asserts four different types of conduct on the part of the Defendants, but again, the Complaint does not differentiate the specific conduct of each Defendant. While some of the specific instances of the alleged misconduct may need to await discovery, the Complaint nevertheless fails to discriminate with regard to the conduct of each Defendant, as to the manner of fraud, and their drugs.

### C.  Failure to State a Claim

Because we are dismissing the Complaint, without prejudice, and allowing the Plaintiff to submit an amended complaint, we will not address the merits of the remaining preliminary objections. We recognize that additional pleadings included in an amended complaint may address any infirmities as to manner of pleading the legal claims included in the original complaint. Thus, for example, additional factual averments may address more completely the nature of the pivotal AWP, such as the origin of the AWP and any duty the Defendants had to disclose the true AWP, and the Plaintiff's reliance thereupon.[9] Further, additional pleadings

---

9. To sustain a charge of fraud or misrepresentation, a petitioner must establish the following:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the

> misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 538 Pa. 193, 207–8, 647 A.2d 882, 889 (1994)(citing W. Page Keaton, *Prosser and Keaton on the Law of Torts* § 105 (5th ed.1984)). Reliance is also an element under the UTPCPL.

may address the question of whether the Defendants acted with malicious intent for the purpose of maintaining a claim for civil conspiracy. *See Rutherfoord v. Presbyterian–University Hospital,* 417 Pa.Super. 316, 612 A.2d 500, 508 (1992). The Defendants have suggested additional failures with regard to the claims brought under the UTPCPL, including standing, which the amended complaint may address. We also defer at this time consideration of the objection the Defendants raise concerning the pending multi-district litigation in Massachusetts and the parens patriae objection Bayer raises with regard to the 2001 Settlement Agreement between the Commonwealth and Bayer. With regard to the Defendants' objection based upon ERISA preemption, the Plaintiff contends that the relief it seeks is different from the relief that is available to ERISA plan fiduciaries. This issue, too, may become clear with the filing of an amended complaint. Accordingly, we will deny this objection as well. Finally, Defendants seek an order striking certain averments in the Complaint because, Defendants contend, they are scurrilous or impertinent. The Complaint does reference certain criminal charges and pleas. Such matters may provide a historical perspective to the alleged conduct; however, such proceedings do not appear to bear a relationship to the elements the Commonwealth must prove in making its case. Accordingly, some such content does seem inappropriate, especially the references to some of the Defendants as "the Criminal Defendants." However, as the Plaintiff notes, courts are reluctant to take the measure of striking such material. Certainly we disfavor such unnecessary references, but, because judges understand the lack of relevancy of such materials, formal striking in this case seems unnecessary. Because this decision will provide the Plaintiff with the opportunity to file an amended complaint we caution the Plaintiff to make such references only where pertinent to the elements necessary to its causes of action.

In summary, we will sustain the preliminary objection as to personal jurisdiction over Takeda. We overrule the preliminary objections challenging personal jurisdiction over BIC, Baxter, AstraZeneca PLC, and Bayer AG. We will sustain the preliminary objection asserting that the Complaint fails to set forth factual averments with the required specificity under Pa. R.C.P. No. 1019(a) and (b). We overrule the remaining objections raising challenges for failure to state a cause of action, standing, raising of improper and scandalous material, and federal preemption.

### ORDER

AND NOW, this 1st day of February 2005, we enter the following:

1. The preliminary objection filed by Takeda Chemical Industries, LTD, as to personal jurisdiction is sustained; because we have no personal jurisdiction over this Defendant, we will not address the merits of its other objections.

2. The preliminary objections filed by Boehringer Ingelheim Corporation, Baxter International Inc., AstraZeneca PLC, and Bayer AG, challenging this Court's personal jurisdiction are overruled.

3. The preliminary objections filed by the Defendants challenging the sufficiency of the Complaint under Pa. R.C.P. No. 1019(a) and (b) are sustained.

4. The remaining preliminary objections are overruled.

5. The Complaint is dismissed, without prejudice to the Plaintiff to file an amended complaint within thirty days of the date of this order.