**Victor and Stephanie BALLETTA, Michael and Susan Proetto, and Michael Reis, Appellants**

v.

**Christopher SPADONI, Individually and in his official capacity as assistant county solicitor, Northampton County Solicitor, Northampton County Sheriff's Office, and Dave Ruberry, Individually and in his official capacity as Deputy Sheriff.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 12, 2012.

Decided June 14, 2012.

---

McCullough, J., concurred in part and dissented in part, and filed opinion.

Matthew B. Weisberg, Morton, for appellants.

Brian H. Leinhauser, West Chester, for appellees.

BEFORE: SIMPSON, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal from a dismissal of a complaint raising defamation claims, Victor and Stephanie Balletta, Michael and Susan Proetto, and Michael Reis (collectively, Appellants) ask whether the Court of Common Pleas of Northampton County (trial court) erred in sustaining the preliminary objections filed by the Northampton County Solicitor's Office, the Northampton County Sheriff's Office, Assistant County Solicitor Christopher Spadoni, and Deputy Sheriff Dave Ruberry (collectively, Appellees). Appellants contend the trial court erred in: (1) failing to recognize the existence of a cause of action for monetary damages pursuant to Article I, Section 1 of the Pennsylvania Constitution based on injury to reputation; (2) determining Appellees were entitled to an immunity-based dismissal of Appellants' suit; (3) concluding that Appellants' averments were legally insufficient to state a claim for defamation as set forth in Section 8343 of the Judicial Code, 42 Pa.C.S. § 8343, and case law; (4) denying Appellants leave to amend their complaint; and, (5) dismissing Appellants' derivative loss of consortium claims. Upon review, we affirm.

## I. Factual and Procedural Background

Through their Third Amended Civil Action Complaint,[1] Appellants aver the following facts.[2] On October 10, 2008, Appellants Michael Proetto, Michael Reis, and Victor Balletta sought to purchase property at a Northampton County Sheriff's sale. They arrived at the sale and attempted to submit bids on nine foreclosed properties. However, Deputy Sheriff Dave Ruberry ignored the bids because they were not predicated on credit. Instead, as they indicated in advance of the sale, Proetto, Reis, and Balletta intended to purchase the foreclosed properties with gold and silver. Prior to the sale, no one advised Appellants that their bids in gold and silver would not be accepted. Five days after the sale, Appellants sent the Northampton County Sheriff's Office affi-

---

1. Appellants initially filed suit against Appellees, Assistant County Solicitor Christopher Spadoni, the Northampton County Solicitor's Office, Deputy Sheriff Dave Ruberry and the Northampton County Sheriff's Office, in the U.S. District Court for the Eastern District of Pennsylvania. After Appellants filed an amended complaint, the federal trial court granted Appellees' motion to dismiss the suit for failure to state a claim. *See* Reproduced Record (R.R.) at 190a–92a. Appellants then filed a Second Amended Civil Action Complaint against Appellees in the Bucks County Common Pleas Court, which, by agreement of the parties, transferred the matter to the Northampton County Common Pleas Court. Appellees then filed preliminary objections. Appellants responded by filing their Third

Amended Civil Action Complaint, which is the subject of this appeal.

2. When an appellate court rules on whether preliminary objections in the nature of a demurrer were properly sustained, the standard of review is *de novo* and the scope of review is plenary. *Mazur v. Trinity Area Sch. Dist.*, 599 Pa. 232, 961 A.2d 96 (2008). We may sustain preliminary objections only when, based on the facts pled, it is clear and free from doubt that the plaintiff will be unable to prove facts legally sufficient to establish a right to relief. *Id.* For the purpose of evaluating the legal sufficiency of the challenged pleading, we must accept as true all well-pled, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. *Id.*

davits further memorializing their bids on the nine properties.

On October 29, 2008, *The Morning Call* newspaper published, in print and online, an article about Appellants' failed attempts to purchase the foreclosed properties. Reproduced Record (R.R.) at 159a–60a. The article included statements from Appellant Michael Proetto and Appellees Deputy Sheriff Ruberry and Assistant Solicitor Spadoni. In relevant part, the article stated:

- "Ruberry thinks [that Appellants] are anarchists ... [Ruberry] speculated the three men might be part of an anarchist movement engaging in a paper terrorism' campaign to clog the courts." R.R. at 160a.
- "Spadoni ... said they may simply be opportunists. Most of the properties the men made unsuccessful bids on were bought by the banks holding the mortgages. By challenging the sales, the men could hold up the bank's ability to sell the property for up to two years, Spadoni said." *Id.*
- "Ruberry believes the men may be fellow travelers of antigovernment groups such as the Sovereign Citizen, Posse Comitatus and Liberty Dollar movements that believe paper money is not legal tender." *Id.*
- "Proetto said while he and his colleagues may hold similar philosophies to those organized groups, they are not associated with any of them and are not on an anti-government campaign.... We're just three guys trying to buy $4 million worth of property with gold and silver—the only real money that was bid." *Id.*

In the article, Proetto also stated the successful bids, which were offered in "illegitimate paper money" used "worthless paper money backed by nothing more than black ink." R.R. at 159a.

Appellants further averred, "[c]ommencing on or about October 28, 2008 and continuing thereafter, [Appellees] made and published newspaper and internet stories defaming [Appellants]. [Appellees] falsely stated and implied that [Appellants] were terrorists, anarchists, and members of anti-government and extremist groups...." R.R. at 144a. Appellants allege Appellees made these statements "in an attempt to, [among other things], create a false impression of [Appellants] so as to *de facto* preclude [Appellants] from future sales." *Id.*

Appellants further alleged Appellees' statements were false, that Appellees made their statements intentionally or with reckless disregard for the truth, resulting in injury to Appellants. Specifically, Appellants averred, since *The Morning Call* printed the defamatory statements, Appellants: "have been threatened; approached by extreme/radical groups mentioned in the [a]rticle; have lost business opportunities, had their endangered families [sic]; Proetto requires psychiatric care; and[,] Balletta purchased firearms for protection." R.R. at 144a–45a.

Based on these averments, Count I of Appellants' complaint alleged a claim for "DEFAMATION/PENNSYLVANIA CONSTITUTIONAL CLAIM" premised on Article I, Section 1 of the Pennsylvania Constitution. Additionally, Appellants Stephanie Balletta and Susan Proetto alleged claims for loss of consortium. Based on these claims, Appellants sought the following relief: an injunction (including monitoring and education); statutory damages; compensatory damages; and, punitive damages.

Appellees responded by filing preliminary objections in the nature of a demurrer. They also asserted immunity from suit under the act commonly known as the

Political Subdivision Tort Claims Act (Tort Claims Act). *See* 42 Pa.C.S. §§ 8541–8542.

Ultimately, the trial court issued an opinion and order in which it sustained Appellees' preliminary objections. More particularly, the trial court rejected Appellants' claim that the Pennsylvania Constitution creates a private right of action for defamation. The trial court noted that Pennsylvania courts consistently hold that Article I, Section 1 of the Pennsylvania Constitution provides Pennsylvania citizens with certain guarantees, including the right to reputation, of which the government may not deprive them without due process. *See Erdman v. Mitchell*, 207 Pa. 79, 56 A. 327 (1903). However, the trial court stated, Pennsylvania courts have not interpreted the Pennsylvania Constitution as a self-executing basis for a defamation suit. Further, even if the Pennsylvania Constitution created such a cause of action, the trial court explained, Appellants' claim could not proceed because neither statute nor case law authorizes an award of monetary damages for a violation of the Pennsylvania Constitution. *See Jones v. City of Phila.*, 890 A.2d 1188 (Pa.Cmwlth. 2006) (*en banc*).

As to Appellants' defamation claims against the Sheriff's Office and the Solicitor's Office that were not based on the Pennsylvania Constitution, the trial court held these entities were immune from suit under the Tort Claims Act. Similarly, the trial court determined Deputy Sheriff Ruberry and Assistant Solicitor Spadoni were immune from suit under the Tort Claims Act. To that end, the trial court stated Appellants did not allege that Deputy Sheriff Ruberry or Assistant Solicitor Spadoni acted in their individual capacities or otherwise acted outside the scope of their official duties. To the contrary, Appellants alleged that at all material times,

Ruberry and Spadoni acted in their official capacities as employees or agents of their respective County offices. Thus, the trial court determined Ruberry and Spadoni enjoyed immunity from Appellants' suit.

In addition, the trial court stated that even if the Tort Claims Act did not shield these county employees from suit, it would nevertheless sustain Appellees' demurrer. Specifically, the trial court stated Ruberry's comments regarding Appellants' political affiliations or philosophies could not, as a matter of law, be defamatory. *See Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983); *Lawrence v. Walker*, 9 Pa. D. & C. 5th 225 (C.P. Centre 2009). Further, Ruberry's comment that Appellants "might be part of an anarchist movement engaging in a paper terrorism' campaign to clog the courts," R.R. at 160a, was not capable of defamatory meaning. In support, the trial court noted that not every embarrassing or annoying publication is actionable. *Rybas*. Finally, the trial court stated Spadoni's comment that Appellants "may simply be opportunists" was pure opinion that was not capable of a defamatory meaning. *See Alston v. PW–Philadelphia Weekly*, 980 A.2d 215 (Pa. Cmwlth.2009).

The trial court also sustained Appellees' preliminary objections to Appellants' loss of consortium claims on the ground that such claims are derivative; therefore, they could not survive in light of the dismissal of the underlying defamation claims. Thus, the trial court dismissed Appellants' complaint with prejudice. Appellants appealed.[3]

## II. Issues

On appeal, Appellants contend the trial court erred in: (1) failing to recognize the existence of a cause of action for monetary

---

**3.** Appellants appealed to the Superior Court, which transferred the matter to this Court.

damages pursuant to Article I, Section 1 of the Pennsylvania Constitution based on injury to reputation; (2) determining Appellees enjoyed immunity from Appellants' suit; (3) concluding Appellants' averments were legally insufficient to state a claim for defamation as set forth in Section 8343 of the Judicial Code and case law; (4) denying Appellants leave to amend their complaint; and, (5) dismissing Appellants' derivative loss of consortium claims.

## III. Discussion

### A. Pennsylvania Constitutional Claim

Appellants initially assert this Court should reverse the trial court and clearly hold a self-executing constitutional tort for defamation exists. Appellants acknowledge the issue of whether a viable claim for "constitutional defamation" exists in Pennsylvania is an issue of first impression. They point out that in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), our Supreme Court established four factors a party must brief in a case implicating a provision of the Pennsylvania Constitution: (1) the text of the Pennsylvania constitutional provision; (2) history of the provision, including Pennsylvania case law; (3) related case law from other states; and, (4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

Applying these factors, Appellants first assert Article I, Section 1 of the Pennsylvania Constitution recognizes that an individual's interest in his reputation is on equal footing with an individual's interests in property and the pursuit of happiness.

As to the second factor, regarding the history of the constitutional provision, Appellants point out the Pennsylvania Constitution, which preceded the U.S. Constitution, recognizes reputation as a fundamental interest of unique impor-

tance. *See Castellani v. Scranton Times, L.P.*, 598 Pa. 283, 956 A.2d 937 (2008) (McCaffrey, J., dissenting); *see also R. v. Dep't of Pub. Welfare*, 535 Pa. 440, 636 A.2d 142 (1994) (citing *Hatchard v. Westinghouse Broad. Co.*, 516 Pa. 184, 532 A.2d 346 (1987)). Appellants maintain in *Hatchard* our Supreme Court stated a remedy must exist for injuries to reputation. *See also Sprague v. Walter*, 518 Pa. 425, 543 A.2d 1078 (1988) (state constitutional interest existed in providing redress for defamation). Comparing Article I, Section 1 of the Pennsylvania Constitution with the Declaration of Independence as well as the Fifth Amendment to the U.S. Constitution, Appellants assert, the Pennsylvania Constitution grants a reputation interest that is not found in the U.S. Constitution.

As to the third factor, Appellants acknowledge there is a lack of case law from other jurisdictions that recognizes a state constitutional tort for defamation. Further, Appellants point out, while the State of Illinois Constitution recognizes reputation in a manner similar to the Pennsylvania Constitution, a federal court in Illinois determined this reference was meant merely as a philosophy rather than creation of a right. *Jacobson v. Nat'l R.R. Passenger Corp.*, No. 97 C 6012, 1999 WL 1101299 (N.D.Ill., filed Nov. 29, 1999).

As to the fourth factor, relating to policy considerations, Appellants argue, as Justice McCaffrey expressed in his dissenting opinion in *Castellani*, our founders intended to create a state civil rights remedy for Pennsylvania's citizens where state officials violate a citizen's constitutional reputation interest through defamation. Appellants point out that in *Jones*, this Court, in considering whether state constitutional provision grants a private remedy, elucidated two possibilities: (1) pursuant to Section 874A of the Restatement (Second)

of Torts; or, (2) where the constitutional provision at issue is self-executing.

Appellants further contend in *Jones* this Court, citing *Erdman* and *Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980), recognized that Article I, Section 1 of the Pennsylvania Constitution is self-executing, and although this Court has not examined the Pennsylvania Constitution as a self-executing basis for a private cause of action for defamation, this Court should adopt a tort of constitutional defamation as espoused in Justice McCaffrey's dissent. Appellants further maintain this Court's recognition of a constitutional tort for defamation is particularly significant if we hold the Tort Claims Act shields local agencies and their employees from suit for defamation claims. Thus, Appellants ask this Court to hold, for the first time, that there exists a self-executing constitutional tort in defamation for which there exists a legal remedy or, in the alternative, that this Court adopt Section 847A of the Restatement (Second) of Torts. *See Jones.*

Article I, Section 1 of the Pennsylvania Constitution states: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and *reputation,* and of pursuing their own happiness." PA. CONST. art. I, § 1 (emphasis added); *see also* PA. CONST. art. I, § 11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or *reputation* shall have remedy by due course of law, and right and justice administered without sale, denial or delay. . . .") (Emphasis added).

■ Appellants are correct that the Pennsylvania Supreme Court acknowledged that the Pennsylvania Constitution establishes reputation as a fundamental right that cannot be abridged without compliance with state constitutional standards of due process and equal protection. *Hatchard.* However, as Appellants concede, there is no Pennsylvania case that creates a cause of action for monetary damages for "constitutional defamation." To that end, although Appellants cite Justice McCaffrey's dissenting opinion in *Castellani* as recognizing that possession and protection of an individual's reputation is an inherent and indefeasible right, Justice McCaffrey did not opine that a cause of action for "constitutional defamation" should be recognized. Additionally, none of the other cases referenced by Appellants suggest that a cause of action for "constitutional defamation" should exist. *See R. v. Dep't of Pub. Welfare; Sprague; Hatchard.* To the contrary, based on the language of Article I, Sections 1 and 11 of the Pennsylvania Constitution, our Supreme Court stated: "The redress provided [for injury to one's reputation] under our body of substantive law *is an action in tort for defamation.*" *Sprague,* 518 Pa. at 439, 543 A.2d at 1084 (emphasis added).

More importantly, in *Jones,* this Court held, "To date, neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." *Jones,* 890 A.2d at 1208 (citing *Robbins v. Cumberland Cnty. Children & Youth Servs.,* 802 A.2d 1239, 1251 (Pa.Cmwlth.2002) (*en banc*) (observing that "[n]either party has briefed the difficult issue of whether there exists a direct right of action for money damages against government officials *for violations of Article I, Section 1 of the Pennsylvania Constitution,* and our research has not uncovered any case where such a cause of action was recognized.")) (Emphasis added.); *see also R.H.S. v. Allegheny Cnty. Dep't of Human Servs., Office of Mental Health,*

936 A.2d 1218 (Pa.Cmwlth.2007) (rejecting claims for monetary damages for alleged violations of state constitutional rights, including a claim under Article I, Section 1, on the ground that *Jones* bars an award of monetary relief for claimed violations of the state constitution).

In *Jones,* this Court reversed a common pleas court's decision that a party could seek a civil remedy for monetary damages against the City of Philadelphia for a violation of his rights under Article I, Section 8 of the Pennsylvania Constitution (protection from unreasonable searches and seizures). Considering several factors, including the existence of an alternative remedy under 42 U.S.C. § 1983 for Fourth Amendment violations by state authorities, and the absence of a Pennsylvania statute similar to 42 U.S.C. § 1983, we determined there is no state constitutional tort action, *i.e.,* a direct cause of action for monetary damages, for a violation of Article I, Section 8 of the Pennsylvania Constitution.

While Appellants are correct that *Jones* involved a claim for monetary damages for a violation of Article I, Section 8 of the Pennsylvania Constitution, its rationale is equally applicable to their claims here. *See R.H.S.; Robbins.* Thus, Appellants have no direct cause of action for monetary damages based on a violation of their state constitutional rights. *Id.* Further, although Appellants' prayer for relief also sought "[i]njunctive relief including but not limited to monitoring and education," R.R. at 146a, Appellants' brief does not indicate they are seeking injunctive relief, and, more importantly, their complaint did not set forth sufficient averments to satisfy the elements required to obtain injunctive relief.

With regard to Appellants' claims that Article I, Section 1 is self-executing, it is noteworthy that in *Harley v. Schuylkill County,* 476 F.Supp. 191 (E.D.Pa.1979), a federal trial court recognized that in the 1903 case of *Erdman,* the Pennsylvania Supreme Court held that Article I, Section I of the Pennsylvania Constitution is, in fact, self-executing.[4] In *Harley,* the federal court denied a motion to dismiss a plaintiff's claim for *monetary damages* under Article I, Section 1 of the Pennsylvania Constitution. In so doing, however, the Court relied on *Erdman,* which involved a claim for *injunctive relief. Accord Hunter* (holding that plaintiff stated a claim under Article I, Section 1 of the Pennsylvania Constitution where plaintiff sought *injunctive relief* in connection with defendant's refusal to train or hire the plaintiff for public employment). Thus, the vitality of the holding in *Harley* is questionable. Indeed, as this Court recognized in *Jones,* the "overwhelming majority" of federal courts in which the issue of whether a cause of action exists for monetary damages under the Pennsylvania Constitution was raised either fail to reach the merits of the case or decline to exercise jurisdiction. *Jones,* 890 A.2d at 1209 n. 33 (emphasis added).

In short, there is no Pennsylvania state case law that permits an action for monetary damages based on a claimed violation of the state constitution. Nor is there any Pennsylvania case law that recognizes an action for "constitutional defamation." Also, as addressed more fully below, clearly an alternative remedy exists here in the

---

4. The Court there stated: "This clause, unlike many others in the Constitution, needs no affirmative legislation, civil or criminal, for its enforcement in the civil courts. Whenever a court of common pleas can be reached by the citizen, these great and essential principles of free government must be recognized and vindicated by the court." *Harley v. Schuylkill County,* 476 F.Supp. 191, 195–96 (E.D.Pa. 1979) (citing *Erdman v. Mitchell,* 207 Pa. 79, 90–91, 56 A. 327, 331 (1903)).

form of a suit for defamation as set forth in Section 8343 of the Judicial Code and case law.

Moreover, *Winter Greenes Joint Venture, LLC v. Department of Environmental Protection,* Civil No. 1:08–CV–1480, 2009 WL 2871081 (M.D.Pa.2009), *rev'd on other grounds,* 2009 WL 2871050 (M.D.Pa. 2009), an unreported decision by a federal magistrate, does not alter this result. As Appellants recognize, the federal magistrate there merely stated that the issue of whether a direct cause of action exists under the various provisions of the Pennsylvania Constitution (apart from the provision addressed in *Jones* ) "remains unsettled." *Id.* at *12. Thus, *Winter Greenes Joint Venture* does not compel the result Appellants seek.

■ Finally, although Appellants make a passing reference, without analysis, to Section 874A of the Restatement (Second) of Torts as a vehicle for allowing a claim for monetary damages under the Pennsylvania Constitution, in *Jones* this Court stated:

> Jones does not raise, and the trial court did not address, two principles some states have relied upon to establish a cause of action for damages for a state constitutional violation: the Restatement (Second) of Torts, Section 874A, and self-executing constitutional provisions. *With regard to the Restatement, Pennsylvania's Supreme Court, like most other state supreme courts, has not yet ruled on whether the principle expressed by Section 874A applied to state constitutional rights.*

*Jones,* 890 A.2d at 1209, n. 35. Because Appellants do not offer a developed analysis of this issue here, we decline to address it, particularly where our Supreme Court has not yet spoken on the issue.

### B. Statutory/Common Law Defamation Claims

#### 1. Immunity

Appellants next argue their complaint also states claims for common law defamation against the individual Appellees in their official capacities and, in the alternative, in their individual capacities. Appellants assert the Tort Claims Act does not apply to government employees acting in their individual capacities. Also, Appellants point out, to the extent they named the individual Appellees in their official capacities, willful conduct is not protected by the Tort Claims Act. *See* 42 Pa.C.S. § 8550. Appellants maintain that Deputy Sheriff Ruberry and Assistant Solicitor Spadoni (and their employers) must be deemed "non-immune" under the Tort Claims Act. Appellants' Br. at 21.

Appellants further argue, to the extent this Court holds that their complaint only avers the individual Appellees acted in their official capacities, we should grant them leave to file a curative amended complaint.[5]

---

5. In their reply brief, Appellants take issue with Appellees' assertions that Appellants' complaint did not plead a claim for statutory/common law defamation, but rather only pled a claim under Article I, Section 1 of the Pennsylvania Constitution. In support, Appellants argue Count I of their complaint is entitled "DEFAMATION/PENNSYLVANIA CONSTITUTIONAL CLAIM," R.R. at 145a, and Appellees challenged both theories through their preliminary objections. Further, Appellants contend the trial court's opinion recognizes that Appellants pled a claim for statutory/common law defamation. Appellants further maintain that, because Appellees did not argue below that Appellants did not plead a claim for defamation, this issue is waived.

Appellees are correct that Appellants' complaint can be fairly construed as only raising a claim under Article I, Section 1 of the Pennsylvania Constitution. *See* R.R. at 145a. Further, contrary to Appellants' assertions,

■■ Immunity from suit is an affirmative defense that must be raised as a new matter in a responsive pleading. *R.H.S.* Courts allow defendants to raise immunity by preliminary objection where the defense is clearly applicable and where the plaintiff does not object. *Id.* Both conditions exist here.

■■ A county is a local agency covered by governmental immunity. *Simko v. Cnty. of Allegheny*, 869 A.2d 571 (Pa. Cmwlth.2005). In order for liability to be imposed on a local agency, three conditions must be met. 42 Pa.C.S. § 8542(a). First, the damages must be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under 42 Pa.C.S. § 8541. Second, the injury must have been caused by the negligent acts of the local agency or an employee of the local agency acting within the scope of his office or duties. Finally, the negligent act must fall within one of the exceptions to governmental immunity set forth in 42 Pa.C.S. § 8542(b). *Simko.* A plaintiff bears the burden of showing all three conditions are met. *Id.*

■■ Here, Appellants' claims against the County Sheriff's Office and the County Solicitor's Office do not fall within any of the exceptions to governmental immunity set forth in the Tort Claims Act. Thus, the trial court did not err in dismissing Appellants' claims against these defendants. *See Alston* (city redevelopment authority

immune from defamation suit under Tort Claims Act).

With regard to Deputy Sheriff Ruberry and Assistant Solicitor Spadoni, Section 8545 of the Tort Claims Act states: "An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa.C.S. § 8545. However, the Tort Claims Act does not shield local agency employees from acts that constitute a crime, actual fraud, actual malice or willful misconduct. 42 Pa.C.S. §§ 8542(a)(2), 8550.

Here, the trial court stated Appellants did not aver Deputy Sheriff Ruberry and Assistant Solicitor Spadoni acted in their individual capacities or "otherwise acted outside the scope of their official duties." *See* Tr. Ct., Slip Op. at 9. As such, the trial court determined Ruberry and Spadoni were shielded by immunity.

■■ Contrary to the trial court's statements, a court's inquiry does not end with a determination of whether the alleged wrongful conduct falls within the scope of a local agency employee's duties or is reasonably related to those duties. *See Petula v. Mellody*, 158 Pa.Cmwlth. 212, 631 A.2d 762 (1993) (*Petula II* ). Rather, if the court determines the alleged wrongful conduct falls within the scope of the local

Appellees did, in fact, raise this issue in their preliminary objections. R.R. at 42a. However, the trial court did not directly address Appellees' contention that Appellants' complaint did not raise claims for statutory/common law defamation. Rather, the trial court analyzed Appellees' alternative objections that they were immune from suit, and that Appellants' complaint was not legally sufficient to state claims for statutory/common law defamation.

Because the trial court construed Appellants' complaint as alleging claims for statutory/common law defamation, we decline to hold that Appellants' complaint did not state such claims. Thus, as set forth below, we address the propriety of the trial court's determinations that Appellees are immune from suit, and that Appellants' complaint is legally insufficient to state a claim for statutory/common law defamation.

agency employee's duties, the court must then examine the plaintiff's complaint to determine if the alleged wrongful conduct constitutes willful misconduct within the meaning of 42 Pa.C.S. § 8550. *Id.* If it does, the local agency employee waived his right to assert immunity to defamation on the basis that the alleged wrongful conduct was within or reasonably related to their duties. *Id.*

■ For purposes of Section 8550 of the Tort Claims Act, "willful misconduct" means "willful misconduct aforethought" and is synonymous with "intentional tort." *R.H.S.*, 936 A.2d at 1230 (citing *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994); *Kuzel v. Krause*, 658 A.2d 856 (Pa.Cmwlth.1995)). Willful misconduct means the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Id.* (citing *Evans v. Phila. Transp. Co.*, 418 Pa. 567, 574, 212 A.2d 440, 443 (1965)).

■ Here, Appellants averred the statements made by Deputy Sheriff Ruberry and Assistant Solicitor Spadoni were false, that these Appellees "knew their statements and their implications were false," and that these Appellees "made their false statements and their implications against [Appellants] intentionally and/or with reckless disregard for the truth." R.R. at 144a. Appellants further alleged Deputy Sheriff Ruberry and Assistant Solicitor Spadoni "made their statements in an attempt to, *inter alia*, create a false impression of [Appellants] so [as] to *de facto* preclude [Appellants] from future sales." *Id.* Considering these averments, which at this early stage of litigation we are obliged to accept regardless of plausibility, the trial court erred to the extent it determined an immunity-based dismissal of the claims against Deputy Sheriff Ru-

berry and Assistant Solicitor Spadoni was appropriate.

Thus, we must consider Appellees' challenges to the legal sufficiency of Appellants' statutory/common law defamation claims against Deputy Sheriff Ruberry and Assistant Solicitor Spadoni.

### 2. Demurrer

Appellants next assert the trial court erred in determining Appellees' comments constituted protected opinion and were not capable of defamatory meaning. On the contrary, they contend, the issue of whether Appellees' expressions constitute opinion is one for discovery. *See Mzamane v. Winfrey*, 693 F.Supp.2d 442 (E.D.Pa.2010) (interpreting Pennsylvania law); *Kurowski v. Burroughs*, 994 A.2d 611 (Pa.Super.2010).

Moreover, Appellants argue, in this day and age, the terms "terrorist," "anarchist," and "anti-government" actor cannot constitute an expression of political ideology, but rather should be considered defamatory *per se*.

Further, Appellants assert the trial court erred in relying on *Rybas*, as that case is distinguishable here. Also, Appellants contend, in a subsequent decision analyzing *Rybas*, our Supreme Court held that where doubt exists as to the defamatory nature of the alleged statements contained in a complaint, a court should decline to sustain preliminary objections and dismiss the suit. *See MacElree v. Phila. Newspapers, Inc.*, 544 Pa. 117, 674 A.2d 1050 (1996).

■ In action for defamation, a plaintiff bears the burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding

by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa.C.S. § 8343(a); *see also Feldman v. Lafayette Green Condo. Ass'n,* 806 A.2d 497 (Pa.Cmwlth.2002).

■ A communication is considered defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *MacElree.*[6] "It is not enough that the victim of the [statements] ... be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society." *Tucker v. Phila. Daily News,* 577 Pa. 598, 616, 848 A.2d 113, 124 (2004).

■ Further, statements alleged to be defamatory must be viewed in context. *Baker v. Lafayette Coll.,* 516 Pa. 291, 532 A.2d 399 (1987). To that end,

> words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable. Thus, *we must consider the full context of the article to determine the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.*

*Thomas Merton Ctr. v. Rockwell Int'l Corp.,* 497 Pa. 460, 465, 442 A.2d 213, 216 (1981) (emphasis added) (citations and quotations omitted).

■ Alleged claims for defamation should not be dismissed on the basis of a preliminary objection in the nature of a

demurrer unless it is clear the communication is incapable of defamatory meaning. *Petula v. Mellody,* 138 Pa.Cmwlth. 411, 588 A.2d 103 (1991) *(Petula I ).* Whether a communication is capable of a defamatory meaning is a question for the court in the first instance. *Id.; Rybas.* However, if the court concludes the communication could be construed as defamatory, the final determination is for the jury. *Petula I.* Under Pennsylvania law, courts act as gatekeepers to determine whether statements are incapable of defamatory meaning in deciding whether any basis exists to proceed to trial. *Mzamane.*

■ Although offensive to the subject, certain types of communications are not actionable. *Feldman.* Generally, a statement that is merely an expression of opinion is not defamatory. *Id.*

Pennsylvania courts have adopted Section 566 of the Restatement (Second) of Torts as an aid in determining whether a statement is strictly opinion. *Braig v. Field Cmmc'ns,* 310 Pa.Super. 569, 456 A.2d 1366 (1983); *Alston; Feldman.* Section 566 states that a defamatory communication in the form of an opinion is only actionable if it implies the allegation of undisclosed defamatory facts as its basis. *Id.* In *Alston,* this Court explained:

> Comment b to Section 566 provides a suitable analysis regarding the types of opinion:
>
> 'There are two kinds of expressions of opinion. *The simple expression of opinion, or the pure type, occurs when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character ....* The second kind

6. A libel is a maliciously written publication that tends to blacken a person's reputation or expose him to public hatred, contempt or ridicule. *Feldman v. Lafayette Green Condo. Ass'n,* 806 A.2d 497 (Pa.Cmwlth.2002).

of expression of opinion, or the mixed type, is one which, while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication. Here the expression of the opinion gives rise to the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant. . . .'

If the defendant states certain non-defamatory facts concerning the plaintiff, on the basis of which he expresses a defamatory opinion, Comment c to Section 566 recognizes that this pure' expression of opinion is absolutely privileged as a result of *Gertz* [*v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) ] . . . .

Comment c states:

'The distinction between the two types of expression of opinion, as explained in Comment b, therefore, becomes constitutionally significant. The requirement that a plaintiff prove that the defendant published a defamatory statement of fact about him that was false (See Section 558) can be complied with by proving the publication of an expression of opinion of the mixed type, if the comment is reasonably understood as implying the assertion of the existence of undisclosed facts about the plaintiff that must be defamatory in character in order to justify the opinion.' **A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable this opinion may be or how derogatory it is** . . . .

*Alston*, 980 A.2d at 220–21 (quoting *Braig*, 456 A.2d at 1372–73) (first emphasis added).

As a threshold matter, we must determine whether the statements made by Deputy Sheriff Ruberry and Assistant Solicitor Spadoni are capable of defamatory meaning. *Petula I.*

■ First, as to the statements made by Deputy Sheriff Ruberry, the article states his belief that Appellants "might be part of an anarchist movement engaging in a paper terrorism' campaign to clog the courts." R.R. at 159a–60a. The article also states Ruberry's belief that "the men may be fellow travelers of anti-government groups such as the Sovereign Citizen, Posse Comitatus and Liberty Dollar movements that believe paper money is not legal tender." R.R. at 160a.

However, the article also fully discloses the facts upon which Deputy Sheriff Ruberry based his opinions. Specifically, the article explains that one of the Appellants, Michael Proetto, stated his gold was the only valid money at the sheriff's sale and the rest of the bids used "worthless paper backed by nothing more than black ink." R.R. at 159a. Proetto further expressed, "[t]he other bidders made an unlawful money bid in credit in opposition to my lawful money bid . . . . I was the only lawful bidder and therefore the only bidder." *Id.* Additionally, the article indicates that after their unsuccessful attempts to purchase the properties at the sheriff's sale using gold and silver, Appellants "returned . . . to file 27 notices challenging the foreclosure sales, in which they lost bids to people using illegitimate paper' money." R.R. at 159a.

The article also details that in some states, anti-government groups clogged court systems, flooding government officials with liens, civil suits and legal challenges to properties purchased at public sales, with what they claimed was illegal money. R.R. at 160a. In response, at

least one state legislature enacted a statute to prevent such conduct. *Id.* The article then states, "Proetto said while he and his colleagues may hold similar philosophies to those organized groups, they are not associated with any of them and are not on an anti-government campaign.... We're just three guys trying to buy $4 million worth of property with gold and silver-the only real money that was bid." *Id.*

Based on the facts disclosed in the article, and when viewed in context of the article in its entirety, Deputy Sheriff Ruberry's statements are non-actionable statements of opinion. *See Alston.* Specifically, while the article sets forth Ruberry's beliefs that the men are "anarchists," "paper terrorists" or "fellow travelers" of certain anti-government groups, the article fully discloses the facts upon which Ruberry based his opinions and does not imply the existence of undisclosed facts. As such, we discern no error in the trial court's gatekeeper determination that Ruberry's statements were not actionable.

■ Moreover, Pennsylvania courts hold that to call a person a name descriptive of his political, economic or sociological philosophies does not give rise to an action for libel. *See Raible v. Newsweek, Inc.,* 341 F.Supp. 804 (W.D.Pa.1972); *Rybas; Lawrence.* In fact, in *Lawrence,* the Court of Common Pleas of Centre County specifically stated that accusations of anarchism or of being an anarchist are incapable of defamatory meaning. Here, Deputy Sheriff Ruberry's comments as to his belief that Appellants are "anarchists," "paper terrorists" or "fellow travelers" of certain anti-government groups, which essentially describe Appellants' political, economic or sociological philosophies, are incapable of defamatory meaning. *See Raible; Rybas; Lawrence.*

■ As to the statements made by Assistant Solicitor Spadoni, the article states it was his belief that Appellants "could be after a quick buck" and "they may simply be opportunists. Most of the properties the men made unsuccessful bids on were bought by the banks holding the mortgages. By challenging the sales, the men could hold up the bank's ability to sell the property for up to two years...." R.R. at 159a–60a. The article further indicates Spadoni stated: "A bank lawyer might just want to pay them to go away. Maybe they're smarter than we think.... But if their argument is that their money is real, and everyone else's is fake, well, I find their argument baseless." R.R. at 160a. As with the statements made by Deputy Sheriff Ruberry, the statements made by Assistant Solicitor Spadoni are statements of opinion, which are based on the facts disclosed in the article and which do not imply the existence of undisclosed facts. Therefore, the trial court properly determined these statements are not actionable.

Analogous is our decision in *Alston.* There, we upheld a common pleas court's dismissal of a defamation suit at the preliminary objection stage where the alleged defamatory statements were statements of opinion based on disclosed facts. In that case, a plaintiff sued, among others, the spokesman for a city redevelopment authority for his statements published in a newspaper article that detailed gentrification efforts in a low-income area of the city, and highlighted the plaintiff's opposition to the development. The article quoted the authority's spokesperson as stating "some point out that while [the plaintiff] is quick to criticize speculators snatching up properties on the cheap, he's collected more than a dozen addresses himself, paying less than market value for some of them." *Id.* at 221. The spokesperson also characterized the plaintiff as a "world-class rabble-rouser" who was "no more than a

land speculator who cloaks himself in the guise of a community activist." *Id.*

Ultimately, this Court affirmed the trial court's determination that, in light of the subject matter of the article, and the plaintiff's participation in the development of the area, these statements were simply expressions of opinion based on disclosed or assumed non-defamatory facts. Thus, the spokesperson's statements were "not ... sufficient for an action of defamation, no matter how unjustified and unreasonable his opinion might be or how derogatory it is." *Id.* (quoting *Braig*, 456 A.2d at 1373).

We reach a similar result here in light of the fact that the statements made by Deputy Sheriff Ruberry and Assistant Solicitor Spadoni were expressions of opinion based on the facts disclosed in the article. *See also Feldman* (affirming dismissal of defamation claim at preliminary objection stage where statement at issue was simply an expression of opinion based on disclosed facts).

As a final point, we distinguish our Supreme Court's decision in *MacElree*, cited by Appellants for the proposition that dismissal of a defamation suit at the preliminary objection stage is improper. In *MacElree*, a former district attorney (and later judge) filed a defamation suit against a newspaper and its reporter based on an article regarding the district attorney's handling of a brawl involving students at a historically African–American university. The article contained accusations that the district attorney was engaged in "electioneering-'the David Duke of Chester County running for office by attacking [the university].'" *Id.* at 120, 674 A.2d at 1052. The common pleas court dismissed the suit on preliminary objections, concluding the statements were not actionable defamation. The Superior Court affirmed.

On further appeal, however, our Supreme Court held that dismissal of the suit was improper because the statements at issue were "more than a harmless accusation of racism," but rather were capable of conveying that the district attorney was abusing his power to "further racism and his own political aspirations." *Id.* at 125, 127, 674 A.2d at 1054, 1055. The Supreme Court stated an accusation that the district attorney acted in such a manner in his official capacity amounted to a charge of misconduct in office, a criminal offense.

Here, unlike in *MacElree*, the statements at issue are not capable of defamatory meaning as a matter of law because they are merely expressions of opinion based on disclosed facts. In *MacElree*, a factual issue existed as to whether the statements were simple accusations of racism (which were not actionable) or whether the statements suggested that a public official committed misconduct in office (which were actionable). No such factual issue exists here so as to preclude dismissal of Appellants' complaint at the preliminary objection stage.

## C. Leave to Amend

Alternatively, Appellants argue the trial court erred in determining that, because Appellants have now filed a third amended complaint, future curative efforts are presumptively futile. Appellants contend this presumption is incorrect as a curative amended complaint would clarify any inconsistencies in their pleading (*i.e.*, with regard to whether Ruberry and Spadoni were sued in their individual and official capacities) and dismissal should not have been with prejudice. *See Com. ex rel. Pappert v. TAP Pharm. Prods. Inc.*, 868 A.2d 624, 636–37 (Pa.Cmwlth.2005) (*en banc*).

Leave to amend a complaint is within the sound discretion of the trial court. *Feldman.* Leave to amend a complaint will be withheld where the initial complaint reveals the *prima facie* elements cannot be established and where the defects are so substantial that amendment is unlikely to cure them. *Id.*

Because we agree with the trial court that the statements at issue are not actionable as a matter of law, we discern no abuse of discretion in the trial court's decision to refuse amendment to the complaint because this defect cannot be cured by amendment. *Id.*

### D. Loss of Consortium

As a final point, Appellants assert if this Court reverses the trial court's dismissal of their defamation claims, their loss of consortium claims should likewise be reinstated.

The trial court dismissed Appellants' loss of consortium claims based on its dismissal of their defamation claims because the loss of consortium claim is a derivative claim, which hinges on the success of the underlying claim of the spouse. *See, e.g., Scattaregia v. Shin Shen Wu*, 343 Pa.Super. 452, 495 A.2d 552 (1985) (loss of consortium claim is dependent on injured spouse's right to recover). Because the trial court properly dismissed Appellants' defamation claims, Appellants' derivative loss of consortium claims cannot proceed.

### IV. Conclusion

Based on the foregoing, we reach several conclusions. First, Pennsylvania does not recognize the existence of a cause of action for monetary damages pursuant to Article I, Section 1 of the Pennsylvania Constitution based on injury to reputation separate and apart from a claim for defamation as set forth in Section 8343 of the Judicial Code and case law. Next, the two county offices are immune from Appellants' suit for statutory/common law defamation. Additionally, while an immunity-based dismissal is not appropriate for the two county employees, the alleged defamatory statements made by these two employees are not actionable as a matter of law, and, therefore, cannot support a suit for defamation. Further, no abuse of discretion is apparent in the trial court's denial of Appellants' request for leave to amend their complaint because the defects in Appellants' complaint are not curable. Finally, the trial court properly dismissed Appellants' loss of consortium claims in light of its dismissal of the defamation claims.

Accordingly, we affirm.

### *ORDER*

**AND NOW,** this 14th day of June, 2012, the order of the Court of Common Pleas of Northampton County is **AFFIRMED.**

CONCURRING/DISSENTING
OPINION BY Judge McCULLOUGH.

I concur in the Majority's decision to affirm the dismissal of the complaint against Mr. Spadoni, both individually and in his official capacity, as well as the Northampton County Solicitor, the Northampton County Sheriff's office, and Mr. Ruberry in his official capacity as well. However, I dissent as to the Majority's decision to affirm the trial court's dismissal of the defamation claim against Mr. Ruberry individually on the basis of a demurrer as it is premature to conclude that, as a matter of law, certain of his statements cannot support a suit for defamation.

I respectfully disagree with the Majority's interpretation that as a matter of law, Mr. Ruberry's statements are incapable of defamatory meaning as a mere expression

of opinion. The subject newspaper article recites that Mr. Ruberry "speculated" that appellants are "paper terrorists" and are "fellow travelers" with various and specifically named organizations which he labels as "anti-government." "Speculation" is not the same as an "opinion" and instead is indicative that the speaker is basing his comments on something other than a complete factual background. Consequently, I believe such statements do not fall within the absolute privilege of *Gertz v. Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

Further, as to the essence of whether Appellants have a claim for "constitutional defamation" pursuant to Article I, Section I of the Pennsylvania Constitution, I believe we do not reach this issue given my position as stated above. *See County Commissioners Association v. Dinges*, 935 A.2d 926, 933 n. 11 (Pa.Cmwlth.2007) ("[C]ourts will avoid constitutional issues when the issue at hand may be decided on other grounds.") (citation omitted).