**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2742
_____

JEREMIAH F. KANE, Esq.;
LOUISE W. KANE,
Appellants

v.

CHESTER COUNTY; DOUGLAS WAEGEL;
GERALD DOWDALL; JANE DOE, In their Official and Individual Capacities
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-01894)
Magistrate Judge: Hon. Timothy R. Rice
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 15, 2020
_____

Before: AMBRO, JORDAN, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: April 17, 2020)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Jeremiah F. Kane and Louise W. Kane appeal the District Court's order dismissing their claims against Chester County, Douglas Waegel, Gerald Dowdall, and Jane Doe. Because the District Court properly dismissed the claims, we will affirm.

I[1]

A

Since 1992, Jeremiah Kane worked as a guardian ad litem ("GAL") for the Chester County Department of Children, Youth, and Families ("CYF") under an annual, at-will employment contract. Each year for twenty years, CYF renewed Kane's contract. Kane had the respect of, and camaraderie with, his CYF coworkers, including Dowdall, a CYF supervisor. At times, Kane and CYF employees, including Dowdall, would engage in "friendly banter," but they never did so while Kane was in court serving as a GAL. S.A. 11 ¶ 29.

In 2009, Kane was appointed GAL for two young boys. The next year, Kane discovered that the boys had been suffering from abuse in a foster home and that CYF knew about the abuse allegations but did not inform him. In November 2012, Kane sued Chester County and CYF employees in his capacity as GAL under 42 U.S.C. § 1983. In May 2013, CYF initially refused to renew Kane's contract, but, following overtures from

---

[1] Because Plaintiffs appeal an order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept the well-pleaded facts alleged in the complaint as true and recount them here. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

2

a Chester County Court of Common Pleas Judge, CYF agreed to renew Kane's contract, and renewed it thereafter from 2014 through 2016. The litigation settled in August 2016.

In late 2016 and the first half of 2017, Kane left several prank voicemails for Dowdall ("prank calls"). In the prank calls, Kane pretended to be a County official and "chastis[ed] . . . Dowdall for driving quickly in the parking garage." S.A. 16 ¶ 63. In May 2017, Kane received a letter from Waegal, then-acting director of CYF, with the initials "bmw" as the transcriber of the letter, informing Kane that his contract would not be renewed. The letter stated that the contract would not be renewed because Kane had left "harassing telephone voice-mails to a CYF supervisor" (1) "in which [he] impersonated a County employee . . . and gave instruction to that employee which [he] was] not authorized to give"; (2) that "imped[ed] that employee from discharging his duties"; and (3) engaged in these actions "while in court on a County/GAL matter for which [he] submitted invoices for payment to the County." S.A. 40. The letter said the County "view[ed this conduct] as unethical, unprofessional, and harassing," that it "ha[d] potentially subjected the County to liability," and that it "call[ed] into serious question [his] judgment and ability to act in the best interest of the children [he] serve[d]." S.A. 40.

With the letter, Waegel included several documents, including a transcript of three voicemails Kane left to Dowdall in which Kane pretended to be an official from the County parking authority and several still images from surveillance footage showing Kane making phone calls while walking down a courthouse hallway. The letter also included an April 11, 2017 email with the subject line "FW: Incidents re: prank phone

3

calls to [Dowdall]" from Waegel to a Chester County solicitor. S.A. 19 ¶ 80. That email forwarded another email stating, "In talking with [Dowdall] further about the messages to reconfirm that the messages were left at his desk phone I asked [Dowdall] to give me the date and time received," and including three emails containing the dates and times of the calls. S.A. 19 ¶ 84. Kane asserts that, although the sender of the forwarded email is redacted, its author is a CYF supervisor.

Kane alleges that members of the Chester County family-law community came under the false impression that he was fired for an alleged impropriety or misconduct beyond the calls. Kane also alleges that before his contract expired, CYF began re-assigning his cases to other attorneys. Among other things, during a June 2017 dependency hearing, the opposing CYF solicitor stopped the hearing and told the Master she received a call from a CYF official that Kane had to be removed from the courtroom because he was no longer a GAL.

B

Plaintiffs sued Defendants in the United States District Court for the Eastern District of Pennsylvania. In their amended complaint, Plaintiffs assert claims against Waegel, Dowdall, and Doe under 42 U.S.C. § 1983 for violating Kane's right to procedural due process under the Fourteenth Amendment; conspiring to retaliate against him for participating in a prior court proceeding under 42 U.S.C. § 1985(2); defamation; false light invasion of privacy; and loss of consortium. Plaintiffs also sued Chester County under Monell v. Department of Social Services, 436 U.S. 658 (1978).

4

Defendants moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). The District Court granted the motion. Plaintiffs appeal.

## II[2]

### A

We first address Kane's § 1983 claim, alleging that Waegel, Dowdall, and Doe violated his right to procedural due process under the Fourteenth Amendment because they caused him reputational harm and prevented him from earning a living in his chosen profession.

To establish a claim that he was deprived of his liberty interest in his reputation, Kane must show "stigma-plus." Specifically, he "must show a stigma to his reputation plus deprivation of some additional right or interest." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis omitted). "For government action to infringe the 'reputation, honor, or integrity' of an individual, that government action first must involve a publication that is substantially and materially false." Ersek v. Township of

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of a district court's order granting a motion to dismiss. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011). We must determine whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (internal quotation marks and citation omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). We disregard "a pleading's legal conclusions" but "assume all remaining factual allegations to be true" and construe them in the light most favorable to the plaintiff. Connelly v. Lane Constr. Corp., 809 F.3d 780, 790 (3d Cir. 2016). Along with the factual allegations in the complaint, "we may consider documents integral to or explicitly referred to in the complaint." In re Lipitor Antitrust Litig., 868 F.3d 231, 249 (3d Cir. 2017) (internal quotation marks omitted).

Springfield, 102 F.3d 79, 83-84 (3d Cir. 1996). In public employment, "when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' [the employer] deprives the employee of a protected liberty interest." Hill, 455 F.3d at 236 (quoting Codd v. Velger, 429 U.S. 624, 628 (1977)). "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" Id.

"To satisfy the 'stigma' prong of the test," the plaintiff must allege "that the purportedly stigmatizing statement(s)" were (1) false, and (2) made publicly. Id. (alteration in original and citations omitted). Thus, the Court first "determine[s] whether the communication complained of is capable of a defamatory meaning."[3] Krajewski v. Gusoff, 53 A.3d 793, 802 (Pa. Super. Ct. 2012) (citation omitted). In general, "a statement that is merely an expression of opinion is not defamatory." Balletta v. Spadoni, 47 A.3d 183, 197 (Pa. Commw. Ct. 2012). "[A] defamatory communication in the form of an opinion is only actionable if it implies the allegation of undisclosed defamatory facts as its basis," id., while "[a] simple expression of opinion based on disclosed or assumed nondefamatory facts is not" actionable, id. at 198 (emphasis and citation omitted).

---

[3] We look to Pennsylvania law to guide our analysis of whether the alleged statements are capable of a defamatory meaning for purposes of the "stigma" prong. See Cooley v. Pa. Hous. Fin. Agency, 830 F.2d 469, 473 (3d Cir. 1987) (applying Pennsylvania defamation law to determine whether defendants had published defamatory statements for "stigma" prong of due process claim), abrogated on other grounds by Foster v. Chesapeake Ins. Co., 933 F.2d 1207 (3d Cir. 1991).

6

Kane alleges that Waegel, Dowdall, and Doe harmed his reputation by publishing false statements (1) in the May 2017 letter, (2) in the April 2017 email, and (3) through their conduct. The District Court determined that Kane failed to plausibly allege the "stigma" prong of the test against Waegel, Dowdall, and Doe in their individual capacities. We agree.

First, the statements in the May 2017 letter are nonactionable opinions. Statements in the letter that Kane's conduct was "unethical, unprofessional, and harassing," "potentially subjected the County to liability," and "call[ed] into serious question [his] judgment and ability to act in the best interest of the children [he] serve[d]," S.A. 40, express Waegel's opinion based on the transcripts of the calls and the images of Kane making the calls. Thus, the opinion was "based on disclosed or assumed nondefamatory facts." Balletta, 47 A.2d at 198 (citation omitted). As a result, the statements are "[in]sufficient for an action of defamation." Id. In addition, the statement that Kane made the calls "while in court" on a GAL matter, S.A. 40, is not "substantially and materially false," Ersek, 102 F.3d at 83-84. Although he claims he did not make calls while discharging his duties, the images show him making calls in the hallway of the courthouse at relevant times.[4] Thus, the May 2017 letter is not defamatory.

Second, the statements in the April 2017 email are not defamatory. In a defamation action, a plaintiff must prove the "application [of the communication] to the

---

[4] The date and time stamps for the voicemails at issue are December 1, 2016 at 2:21 p.m., March 2, 2017 at 4:10 p.m., and April 3, 2017 at 2:43 p.m. Photographs of Kane on the phone in the courthouse are from March 2, 2017 at 4:08-4:10 p.m., and April 3, 2017 at 2:42 p.m. There is no picture for the December 1, 2016.

plaintiff" and "[t]he understanding by the recipient of it as intended to be applied to the plaintiff." 42 Pa. Cons. Stat. Ann. § 8343(a)(3), (5). The email does not mention or describe Kane. See Weirton Med. Ctr., Inc. v. Introublezone, Inc., 193 A.3d 967, 973 (Pa. Super. Ct. 2018) (holding that plaintiff had not established prima facie case for defamation for video published because video did not identify plaintiff). Moreover, there is no allegation that the email's reference to the "prank [phone] calls" is false. S.A. 20 ¶ 94. Therefore, the email does not provide a basis for Kane's due process or defamation claims.

Third, Kane's allegation that the information in the letter and email was shared with others at the June 2017 hearing fails because the CYF solicitor's statement at the hearing is privileged. Richmond v. McHale, 35 A.3d 779, 784 (Pa. Super. Ct. 2012). Under Pennsylvania law, "statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." Id. (citation omitted). The solicitor's statements were made during a judicial proceeding and thus are privileged and cannot serve as a basis for relief.

Because Kane has failed to plausibly allege the "stigma" prong of his claim, the District Court correctly dismissed Kane's due process claim.[5]

---

[5] Kane's state law defamation per se claim against Waegel, Dowdall, and Doe for the statements made in the May 2017 letter and the dissemination of those statements to "bmw" and others in Chester County fails for the same reasons as his stigma plus claim. Under Pennsylvania law, a plaintiff must, among other things, allege the defamatory character of the letter. 42 Pa. Cons. Stat. Ann. § 8343(a); Krajewski, 53 A.3d at 802. As

8

B

We next address Kane's claim under § 1985(2) that Waegel, Dowdall, and Doe conspired to retaliate against him for participating in the 2012 lawsuit.

Section 1985(2) prohibits conspiracies to retaliate against parties or witnesses in any United States Court, Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976), including conspiracies to have an at-will employee terminated in retaliation for testifying in federal court, Haddle v. Garrison, 525 U.S. 121, 125-26 (1998).  Whether Kane has pleaded a conspiracy is "a threshold issue."  Heffernan v. Hunter, 189 F.3d 405, 411 (3d Cir. 1999).  "To constitute a conspiracy, there must be a 'meeting of the minds.'" Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)).

The District Court properly held that Kane had failed to plausibly allege a conspiracy among Waegel, Dowdall, and Doe.  Kane alleges that the April email reflects a "mutual understanding sufficient to show conspiracy."  S.A. 29 ¶ 141.  In the email, however, the writer states only that he or she is talking to Dowdall "further about the messages to reconfirm that the messages were left at his desk phone" and to determine the time and date received.  S.A. 49.  Because the email fails to mention Kane or to show any desire to take concerted action against him, it does not evince an agreement or "a meeting of the minds" among Waegel, Dowdall, and Doe.  See Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 179 (3d Cir. 2010) (holding that

_____

explained above, the May 2017 letter expressed opinions based on disclosed facts and thus are not actionable defamatory statements.

9

plaintiff had failed to plausibly allege a conspiracy where he alleged only "in general terms the approximate time when the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy, or the object of the conspiracy" (citation omitted)).

Kane also does not allege facts showing a connection between his 2017 termination and his role in the 2012 lawsuit. While Kane argues that a conspiracy to retaliate can be inferred from CYF's "failed attempt" to terminate his employment in 2013, S.A. 30 ¶ 142, he does not allege that Waegel, Dowdall, or Doe were involved in the 2013 attempt to terminate him. Furthermore, the temporal proximity between the May 2017 termination letter and the 2012 lawsuit, or even the August 2016 settlement of that suit, is remote and thus not "unusually suggestive of retaliatory motive."[6] Cf. Estate of Smith v. Marasco, 318 F.3d 497, 512-13 (3d Cir. 2003) (explaining in First Amendment retaliation case that "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive," and concluding that timing of action in July 1999, after complaints from 1991 to 1998, was not unusually suggestive of retaliatory motive). The District Court correctly dismissed his conspiracy claim.

---

[6] As the District Court correctly held, Kane's § 1985 conspiracy claim against Waegel, Dowdall, and Doe in their official capacities fails because "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." Ziglar v. Abbasi, 137 S. Ct. 1843, 1867 (2017). "When two agents of the same legal entity make an agreement in the course of their official duties, . . . their acts are attributed to their principal," and thus "there has not been an agreement between two or more separate people." Id.

10

C

Kane's Monell claim under § 1983 also fails.  For § 1983 liability to attach to a municipality, the plaintiff "must show that the [municipality] was responsible for any constitutional violations," and thus there "must be a violation of [the plaintiff's] constitutional rights."  Startzell, 533 F.3d at 204 (citation omitted).  Because Kane failed to plausibly allege a violation of his constitutional rights, his Monell claim was appropriately dismissed.[7]

D

Kane's Pennsylvania false light invasion-of-privacy claim against Waegel, Dowdall, and Doe—based on the statements in the May 2017 letter, their investigation of the voicemails by pulling surveillance footage, their reassignment of his cases, and the statements at the June dependency hearing—lacks merit.

To establish a false light invasion-of-privacy claim under Pennsylvania law, a plaintiff must show that a defendant publicized a highly offensive statement with knowledge or in reckless disregard of its falsity.  See Graboff v. Colleran Firm, 744 F.3d 128, 136-37 (3d Cir. 2014); see also Krajewski, 53 A.3d at 805-06.  A false-light claim is "limited by the requirement that the false information be given 'publicity'" "by communicating it to the public at large, or to so many persons that the matter must be

_____

[7] Kane also sued Waegel, Dowdall, and Doe in their official capacities.  A suit against a County official "in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "is no different than a suit against the [County] itself."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Because Kane's Monell claim fails, his official capacity claims do too.

11

regarded as substantially certain to become one of public knowledge." Curran v. Children's Serv. Ctr. of Wyo. Cty., Inc., 578 A.2d 8, 12 (Pa. Super. Ct. 1990) (quoting Restatement (Second) of Torts § 652D cmt. a (Am. Law Inst. 1977)). Unlike defamation, "false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression." Krajewski, 53 A.3d at 806. "It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy." Id. at 807 (quoting Restatement (Second) of Torts § 652E cmt. c (Am. Law Inst. 1977)).

The District Court correctly dismissed Kane's false-light claim. The surveillance footage did not involve a "major misrepresentation" of Kane's character or activities but was merely an image of him making calls in the courthouse hallway. See § 652E cmt. c. The statement at the June dependency hearing was "absolutely privileged" as the statement of an attorney during a judicial proceeding. See Richmond, 35 A.3d at 784. Finally, his claim based on the May 2017 letter fails because Kane's allegations that the statements in the letter were "publicized to multiple people" "who learned of the letter" and his firing, S.A. 34 ¶ 160, do not allege any facts showing which statements were

12

shared and by whom.  Thus, the District Court correctly dismissed Kane's false-light claim.[8]

III

For these reasons, we will affirm.

---

[8] Because Louise Kane's loss of consortium claim was derivative of Kane's predicate state law claims, and none remain, the loss of consortium claim was also properly dismissed.  See Balletta, 47 A.3d at 201.