IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ramon Vasquez,                           :
                    Appellant           :
                                         :
          v.                             :
                                         :
CO Dorta, CO Houk, Treatment            :    No. 1468 C.D. 2021
Counselor Brenna, and Jessica Collins   :    Submitted: November 4, 2022


OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                    FILED: April 11, 2023


Ramon Vasquez (Vasquez), *pro se*, appeals from the November 22, 2021 order of the Berks County Court of Common Pleas (trial court) sustaining the preliminary objections to his amended complaint and dismissing the amended complaint with prejudice. Upon review, we affirm.


## I. Background

Vasquez was incarcerated in the Berks County Jail System (county jail) in or around January 2019. *See* Original Record (O.R.), Amended Complaint, 7/28/21 at 3, ¶ 1. In June 2020, Vazquez filed a complaint levying a constitutional claim of interference with access to courts and tort claims of negligence, intentional infliction of emotional distress, and slander against various county jail employees. *See* Complaint, 6/22/20 at 1-11. In November 2020, the named defendants (hereinafter collectively referred to as Appellees) filed preliminary objections to Vasquez's complaint. *See* O.R., Trial Ct. Op., 3/18/22 at 3.

In July 2021, Vasquez filed an amended complaint. *See* O.R., Amended Complaint, 7/28/21. Count I, titled "Right to Assistance," asserted that Jessica Collins (Collins) and Brenna Delp (Delp)[1] violated Vasquez's right of access to the courts by "willfully intend[ing] to frustrate and impede" his ability to attack one of his criminal convictions.[2] *Id.* at 9-10, ¶ 24. Vasquez alleged that Collins and Delp intentionally "obstructed" his appeal to the United States Supreme Court by failing to fulfill his request for the type of "heavy duty" stapler necessary to comply with applicable procedural rules, thereby resulting in the denial of his petition for *certiorari*. *Id.* at 5-6 & 10, ¶¶ 12-14 & 24.

In Count II, Vasquez alleged that Collins and Delp displayed a "willful, careless, or reckless disregard" of the requirements for Vasquez's appeal, which resulted in the denial of his petition for *certiorari* by the United States Supreme Court. O.R., Amended Complaint, 7/28/21 at 10, ¶ 25. Vasquez also contended that Delp "willfully, carelessly, or recklessly disregard[ed]" an "oral agreement of confidentiality," causing Vasquez to develop a "physical manifestation of severe mental suffering" and incur an "unreasonable risk of harm[.]" *Id.* at 10, ¶ 26.[3]

---

[1] Vasquez alleged that Brenna Delp's (Delp) responsibilities as a treatment counselor with the Berks County Jail System's (county jail) Delta Unit included facilitating inmates' use of the law library department. Original Record (O.R.), Amended Complaint, 7/28/21 at 2-3, ¶ 2. Vasquez further alleged that Jessica Collins (Collins) served as Delp's supervisor, and that Dorta and Houk worked as county jail correctional officers. *Id.*

[2] The section of Vasquez's amended complaint titled "Relevant Facts" contains Vasquez's averment that Delp agreed to assist Vasquez in the preparation of a petition for *certiorari* pertaining to a conviction for "flight to avoid apprehension," a second-degree misdemeanor. O.R., Amended Complaint, 7/28/21 at 5, ¶ 12.

[3] In the amended complaint, Vasquez averred that he requested assistance from Delp in making copies of a civil action he intended to file in federal court regarding a sexual assault he allegedly suffered in another institution. *See* O.R., Amended Complaint, 7/28/21 at 3, ¶ 3. Despite agreeing to maintain confidentiality, Delp nevertheless shared the sensitive contents of the

Additionally, Vasquez maintained that corrections officers Dorta and Houk exhibited a "willful, careless, or reckless disregard" for his health and safety by repeatedly making derogatory comments regarding his sexual orientation, resulting in a "physical manifestation of severe mental suffering" and an "unreasonable risk of harm."[4] *Id.* at 10-11, ¶ 27. Vasquez asserted that set of allegations "constituted the [t]ort of [n]egligence under Pennsylvania law." *Id.* at 10, ¶ 26; *see also id.* at 10-11, ¶¶ 25 & 27.

In Count III, Vasquez claimed that Dorta and Houk committed the tort of intentional infliction of emotional distress, alleging that they "intended, recklessly disregarded, or knew with substantial certainty" that referring to Vasquez as a "she" and a "faggot," in addition to "other derogatory comments," would "bring about

---

complaint with Dorta and Houk. *Id.*, ¶¶ 3-7. Vasquez filed a grievance against Dorta and Delp. *Id.* at 4, ¶ 9. However, Vasquez was informed that a review of video footage did not corroborate his claim that Delp shared Vasquez's legal documents. *Id.* at 5, ¶¶ 9-10. Vasquez appealed the grievance determination but his allegations were ruled unfounded. *Id.*, ¶ 11.

[4] Vasquez also alleged that Houk knew Vasquez was a sexual assault survivor, yet Houk "repeatedly" and "constant[ly]" referred to Vasquez as a "she" or a "faggot" in the presence of other inmates. O.R., Amended Complaint, 7/28/21 at 7-8, ¶¶ 15, 17 & 19. Houk's comments allegedly resulted in "constant heckling" and hostility from other inmates which, in combination with time spent in solitary confinement, caused Vasquez to suffer humiliation, shame, anxiety, nausea, headaches and flashbacks. *Id.* at 7 & 9, ¶¶ 16 & 21. Vasquez filed a grievance and a Prison Rape Elimination Act, 34 U.S.C. §§ 30301-30309, complaint against Houk, both of which were denied. *Id.* at 8, ¶¶ 19-20. Vasquez appealed the denial of his grievance but was unsuccessful. *Id.* at 9, ¶ 21.

Regarding Vasquez's averment that he was a survivor of sexual assault, he alleged such assault by his cellmate as the basis of his claim of self-defense in his criminal trial on charges of attempted murder, aggravated assault, and simple assault after he attacked his cellmate; that claim of self-defense proved unsuccessful. *See Commonwealth v. Vasquez* (Pa. Super., No. 828 MDA 2020, filed June 23, 2021), *appeal denied*, 272 A.3d 951 (Pa. 2022). Vasquez also claimed his cellmate had repeatedly put psychiatric medicines in Vasquez's food and then sexually assaulted him as he slept, a claim which a federal court in a subsequent related *habeas corpus* proceeding characterized as "grossly implausible" and "so unlikely that it certainly cast doubt upon his claim that [his cellmate] assaulted him on the day of [Vasquez's] crime." *Vasquez v. Rivello*, No. 22-2379, 2022 U.S. Dist. LEXIS 224693, at *21 (E.D. Pa. Oct. 17, 2022).

3

humiliation or shame for being a sexual assault victim." *Id.* at 11, ¶ 28. Vasquez asserted that the actions of Dorta and Houk were "extreme, outrageous, and intolerable in civilized society," and that they resulted in "a physical manifestation of severe mental and emotional harm that required medical attention." *Id.*

In Count IV,[5] Vasquez alleged that Houk committed slander, because he "had actual knowledge," or "failed to exercise the standard of care a reasonable prudent person would in a similar situation" or "recklessly disregarded that the false allegations about Vasquez and sexual misconducts were untrue," thereby "caus[ing] special harm to Vasquez[']s reputation." *Id.* at 11, ¶ 29.

Appellees filed preliminary objections to the amended complaint. *See* O.R., Preliminary Objections to Amended Complaint, 8/3/2021. In November 2021, the trial court sustained the preliminary objections and dismissed the amended complaint with prejudice. *See* O.R., Trial Ct. Order, 11/22/21.

In March 2022, the trial court issued an opinion in support of its November 22, 2021 order. The court deemed meritless Vasquez's "Right to Assistance" claim, pointing out that the county jail had informed Vasquez that it did not have the ability to bind documents and that, regardless, his brief was too thick to staple. *See* O.R., Trial Ct. Op., 3/18/22 at 4 (citing Original Complaint, 6/22/20, Exs. 5 & 6).[6] Further, the trial court determined that "it [was] pure speculation on

---

[5] Vasquez erroneously labeled the fourth count of his amended compliant "Count V." *See* O.R., Amended Complaint, 7/28/21 at 11.

[6] The trial court observed that Vasquez's amended complaint was "almost identical [to his original complaint] with no different facts or allegations," yet lacked the exhibits attached to the original complaint. O.R., Trial Ct. Op., 3/18/22 at 1-2. Concluding that Vasquez omitted these exhibits in an attempt "to eliminate the [p]reliminary [o]bjections regarding the original complaint," the court explained that it still considered the exhibits on the basis that they were "of record and belie[d] the allegations in both complaints." *Id.* at 3-4 (citing *Jenkins v. Cnty. of Schuylkill*, 658 A.2d 380, 383 (Pa. Super. 1995) (holding that courts "are not bound to accept as

4

[Vasquez's] part that the denial [of his petition for writ of *certiorari*] was due to [] improper binding," as the United States Supreme Court did not provide a reason in support of its denial. *Id.* at 5 (citing Original Complaint, 6/22/20, Ex. 8). Moreover, the trial court noted that Vasquez's petition for *certiorari* was not rejected as noncompliant, as it was filed and docketed. *See id.*; O.R., Defendants' Reply Br. in Support of Preliminary Objections, 10/25/21, Ex. A.

The trial court also concluded that Vasquez's negligence claim was meritless, as he failed to plead an exception to immunity under Section 8542 of what is commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act),[7] 42 Pa.C.S. § 8542. O.R., Trial Ct. Op., 3/18/22 at 5-6. The trial court rejected Vasquez's assertion in his reply brief that Delp acted with "actual malice" and/or "willful misconduct," as "those terms and actions are associated with intentional torts, which plaintiff did not plead" in the context of his negligence claim. *Id.* at 6.

Further, the trial court deemed meritless Vasquez's intentional infliction of emotional distress claim. O.R., Trial Ct. Op., 3/18/22 at 6. The court concluded Vasquez's allegation that Dorta and Houk were aware he was a sexual assault survivor failed to plead knowledge of any particular susceptibility to emotional distress. *Id.* at 7. The court also reasoned that "the mere fact that a perpetrator knows that the recipient of the action will regard the conduct as insulting or have his feelings hurt is not enough" to prevail in a claim for the intentional

---

true any averments in a complaint which are in conflict with exhibits which are attached to the complaint"). We note that an amended complaint withdraws the original complaint, such that anything from the first complaint that is not incorporated in the amended complaint by reference must be deemed withdrawn. *Christianson v. Ely*, 838 A.2d 630, 641 (Pa. 2003) (citations omitted). Accordingly, this opinion does not rely on the attachments to Vasquez's original complaint or on the portions of the trial court's opinion described herein that relied on those attachments.

[7] 42 Pa.C.S. §§ 8541-42.

5

infliction of emotional distress. *Id.* (citing *Weinstein v. Bullick*, 827 F. Supp. 1193 (E.D. Pa. 1993)). Moreover, the court inferred from Vasquez's increased level of confinement in the Delta Unit that he likely had "issues" with other inmates and that "he did not appear to be a fragile individual." *Id.* at 6-7.

Lastly, the trial court concluded that Vasquez's claim of slander against Houk was barred by an unspecified form of "immunity," reasoning that "Commonwealth personnel are immune from liability for intentional torts when acting in the scope of their employment," and that "[t]his immunity also covers local agencies, including [county jail] staff." O.R., Trial Ct. Op., 3/18/22 at 7 (citing *Brown v. Clark*, 184 A.3d 1028, 1029 (Pa. Cmwlth. 2018)). Further, the trial court determined that Vasquez failed to demonstrate that the allegedly defamatory statement harmed his reputation in the prison community or deterred third persons from associating or dealing with him, as Vasquez resided among "similar people who were accustomed to worse behavior." *Id.* at 7-8 (citing *Kryeski v. Schott Glass Techs., Inc.*, 626 A.2d 595, 600 (Pa. Super. 1993)).

Vasquez thereafter filed a notice of appeal with this Court.

## II. Discussion

On appeal, Vasquez argues that the trial court erred in sustaining the Appellee's preliminary objections.[8] For the following reasons, we affirm the court's

---

[8] Our scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law, or whether constitutional rights were violated. *Chester Upland Sch. Dist. v. Yesavage*, 653 A.2d 1319, 1321 (Pa. Cmwlth. 1994)). Further, "[i]n an appeal challenging the sustaining of preliminary objections in the nature of a demurrer, we must determine whether on the facts averred, the law states with certainty that no recovery is possible." *Id.* Thus, "[t]he test for preliminary objections is whether it is clear and free from doubt from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish a right to relief." *Id.* "However, the Court need not accept as true any expressions of opinion, argumentative

6

dismissal of Vasquez's amended complaint, albeit in part on different grounds from those on which the trial court relied.

## A. Access to Courts

Vasquez contends that Delp and Collins violated his right of access to the courts by "cho[osing] to misinform [him] about their ability to help" provide the type of "heavy duty" stapler Vasquez alleges was necessary to prepare his petition for *certiorari* in accordance with the rules of the United States Supreme Court. *See* Vasquez's Br. at 24-26 (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Vasquez asserts that his inability to properly bind his petition resulted in actual injury when the Court denied his petition. *Id.* at 27-29 (citing *Lewis*). Vasquez maintains that the claim impeded by Appellees was nonfrivolous and that he "informed both Delp and Collins that he was attacking his criminal conviction and proceeding *pro se*." *Id.* at 27-28 (citing *Lewis*).

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."[9] *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (citing *Lewis*, 518 U.S. at 346). This Court has explained that

> in order to state a cognizable claim for violation of the right to access to the courts, a prisoner must allege and offer proof that he suffered an "actual injury" to court access . . . . *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d

allegations or unwarranted inferences from the facts." *Hackett v. Horn*, 751 A.2d 272, 274 (Pa. Cmwlth. 2000).

[9] "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. Nat'l Lab. Rels. Bd.*, 461 U.S. 731, 741 (1983); *see also* U.S. Const. amend. I. Further, "the right of access to the courts is fundamental as guaranteed by the Fourteenth Amendment." *Zilich v. Lucht*, 981 F.2d 694, 694-95 (3d Cir. 1992) (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977)); *see also* U.S. Const. amend. XIV.

Cir. 1997). The Supreme Court has defined actual injury as the loss or rejection of a nonfrivolous legal claim regarding [] sentencing or the conditions of confinement. *Lewis*[.]

*Hackett v. Horn*, 751 A.2d 272, 275-76 (Pa. Cmwlth. 2000). "[T]his Court also recognizes that due process requires that an inmate must be afforded access to the courts in order to challenge unlawful convictions and violations of his constitutional rights." *Id.* at 275 (additional citations omitted). Further, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 416-17 (2002)); *see also Stover v. Progress Cmty. Corr. Ctr.* (Pa. Cmwlth., No. 311 M.D. 2015, filed June 8, 2016), slip op. at 9 (quoting *Christopher*, 536 U.S. at 415) ("It follows that the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.").

Here, the trial court dismissed Vasquez's access to courts claim on the basis that it was "pure speculation on [his] part" that the United States Supreme Court denied his petition for writ of *certiorari* due to improper binding where the Court provided no reason in support of its order. O.R., Trial Ct. Op., 3/18/22 at 5. Thus, the trial court essentially dismissed Vasquez's claim on the basis that he failed to establish "actual injury" to court access. *Hackett*, 751 A.2d at 275. As noted above, "[t]he Supreme Court has defined actual injury as the loss or rejection of a *nonfrivolous* legal claim . . . ." *Id.* (emphasis added). Thus, "[i]n order to survive dismissal of a complaint, a prisoner [alleging unconstitutional interference with access to the courts] must describe [the] underlying claim and explain why it possesses arguable merit." *Nifas v. Sroka* (Pa. Cmwlth., No. 422 C.D. 2016, filed

July 29, 2016), slip op. at 7 (citing *Christopher*, 536 U.S. at 416-17); *see also Young v. Wetzel* (Pa. Cmwlth., No. 792 C.D. 2020, filed March 16, 2021), slip op. at 8-9 (additional citations omitted) (explaining that "[l]ike any other element of an access [to courts] claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant").

Here, Vasquez simply alleged that his petition for writ of *certiorari* filed with the United States Supreme Court pertained to a second-degree misdemeanor "flight to avoid apprehension" conviction. *See* O.R., Amended Complaint, 7/28/21 at 5, ¶ 12. Vasquez failed to elaborate further or to "describe the underlying arguable claim well enough to show that it is 'more than mere hope.'" *Monroe*, 536 F.3d at 205-06 (quoting *Christopher*, 536 U.S. at 416-17). As acknowledged by the trial court, whether or not the United States Supreme Court denied Vasquez's petition for writ of *certiorari* due to improper binding is "pure speculation." O.R., Trial Ct. Op., 3/18/22 at 5. We, therefore, affirm the trial court's dismissal of Vasquez's access to courts claim on the alternative basis[10] that he failed to demonstrate that the underlying claim contained in his petition for writ of *certiorari* possessed arguable merit. *See Hackett*, 751 A.2d at 275-76; *Nifas*, slip op. at 7 (affirming dismissal of access to courts claim, where inmate did not "provide[] any factual detail in his complaint regarding what legal claim he lost, or was deprived of pursing, as a result of the confiscation of his legal materials," failing even to "discuss the general nature of his legal claim"); *see also Young*, slip op. at 8-9 (disagreeing with the trial court's holding that inmate's failure to exhaust

---

[10] "This Court may affirm on grounds different [from] those relied upon by the court or agency below if such grounds for affirmance exist." *Smart Commc'ns Holding, Inc. v. Wishnefsky*, 240 A.3d 1014, 1016 n.2 (Pa. Cmwlth. 2020) (additional citations omitted)).

administrative remedies warranted dismissal of his access to courts claim, but affirming on the alternative basis that the inmate "[did] not identify specifically a nonfrivolous, arguable underlying claim").

## B. Negligence

Vasquez contends that Delp and Collins committed negligence when they "made the choice to lie to him[] about their ability to fulfill a particular service," thereby causing him to "los[e] his right to file a sufficient petition to the United States Supreme Court, which later denied review." Vasquez's Br. at 29-30. Vasquez also asserts that Delp and Collins owed him a duty to reasonably warn him of any potential harm, because their role in "facilitat[ing] the law library department for segregated inmates" and his dependence on the Commonwealth as an institutionalized individual gave rise to a "special relationship." *Id.* at 29-30. Further, Vasquez alleges that Delp negligently shared "sensitive personal information," which she had agreed to keep confidential, "with her co-workers for pure gossip[] purposes." *Id.* at 32. Vasquez maintains that "Delp[']s actions were a substantial factor that triggered Dorta to berate Vasquez in front of others, which then incited inmates to heckle him for months about his personal information," and that "Houk kept the pot stirring with his comments to and about Vasquez." *Id.* at 33. Moreover, Vasquez contends that the trial court erred in determining that immunity barred his negligence claims, because Appellees committed willful misconduct. *See id.* at 30-32 (citing Section 8550 of the Tort Claims Act, 42 Pa.C.S. § 8550).[11]

_____

[11] Section 8550 of the Tort Claims Act provides that

10

Pursuant to Section 8545 of the Tort Claims Act,

> [a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

42 Pa.C.S. § 8545. Section 8542 of the Tort Claims Act establishes exceptions to governmental immunity for "injury [] caused by the negligent acts of [a] local agency or an employee thereof acting within the scope of his office or duties with respect to" the following categories of acts: (1) vehicle liability; (2) care custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care custody or control of animals; and (9) sexual abuse. Section 8542(a), (b) of the Tort Claims Act, 42 Pa.C.S. § 8542(a), (b).

Here, Vasquez alleged the violation of a duty of care with respect to his appeal to the United States Supreme Court, an oral agreement of confidentiality, and his physical and mental welfare as a county jail inmate. *See* O.R., Amended Complaint, 7/28/21 at 10-11 ¶¶ 25-27. None of these theories of negligence implicates acts which fall within the limited waiver of immunity for employees of local agencies. *See* Section 8542(b) of the Tort Claims Act, 42 Pa.C.S. § 8542(b).

> [i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S. § 8550.

We therefore agree with the trial court that official immunity bars Vasquez's negligence claims against Appellees.[12]  *See* 42 Pa.C.S. §§ 8542, 8545; *see also Diaz v. Houck*, 632 A.2d 1081, 1085-86 (Pa. Cmwlth. 1993) (holding that official immunity barred arrestee's negligence claim against police officers, as none of the exceptions to immunity set forth in Section 8542(b) of the Tort Claims Act, 42 Pa.C.S. § 8542(b), were applicable); *Higgins v. Borough of Taylor*, 551 F. Supp. 2d 370, 378 (M.D. Pa. 2008) (granting defendants' motion to dismiss arrestee's state law negligence claim against municipality, where the alleged negligence did not fall into any of the specifically enumerated exceptions to immunity).

We further agree with the trial court that Vasquez cannot overcome Appellees' immunity by alleging willful misconduct in the context of his negligence claims.  *See* Section 8542(a)(2) of the Tort Claims Act, 42 Pa.C.S. § 8542(a)(2) (providing that a "'negligent act' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct"); *see also Gray v. Great Valley Sch. Dist.*, 102 F. Supp. 3d 671, 681 (E.D. Pa. 2015) (citation and quotation marks omitted) (holding that plaintiff "[could not] show 'willful misconduct,' because a [negligent infliction of emotional distress] claim, by definition, is predicated on negligence and not intent, which contradicts the requirement of willful misconduct contained in [Section] 8542(b)" of the Tort Claims Act, 42 Pa.C.S. § 8542(b)); *Heckensweiler v. McLaughlin*, 517 F. Supp. 2d 707, 719-20 (E.D. Pa. 2007) (holding that township chief of police was immune from claims of negligence

---

[12] Appellees qualify as employees of a local agency for purposes of official immunity.  *See, e.g.*, *King v. Breach*, 540 A.2d 976, 977 & 981 (Pa. Cmwlth. 1988) (holding that negligence claims levied against county prison warden and administrator of county mental health and mental retardation program were barred by official immunity pursuant to Section 8545 of the Tort Claims Act, 42 Pa.C.S. § 8545); *see also* Section 8501 of the Tort Claims Act, 42 Pa.C.S. § 8501 (defining the term "[l]ocal agency" as "[a] government unit other than the Commonwealth government").

and negligent infliction of emotional distress pursuant to Section 8545 of the Tort Claims Act, 42 Pa.C.S. § 8545, despite allegations of willful misconduct).

Moreover, to the extent the assertions in the context of the negligence claim may be construed as alleging intentional torts arising from willful misconduct, Vasquez fails to plead a sufficient claim. This Court has held that

> [f]or purposes of Section 8550 of the Tort Claims Act, [42 Pa.C.S. § 8550,] "willful misconduct" means "willful misconduct aforethought" and is synonymous with "intentional tort." *Renk v. City of Pittsburgh*, . . . 641 A.2d 289 ([Pa.] 1994); *Kuzel v. Krause*, 658 A.2d 856 (Pa. Cmwlth. 1995). Willful misconduct means the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Evans v. Phila. Transp. Co.*, . . . 212 A.2d 440, 443 ([Pa.] 1965).

*R.H.S. v. Allegheny Cnty. Dep't of Hum. Servs., Off. of Mental Health*, 936 A.2d 1218, 1230 (Pa. Cmwlth. 2007). Here, the various theories of negligence propounded by Vasquez contain allegations that Appellees "willful[ly], careless[ly], or reckless[ly] disregard[ed]" an "unreasonable risk of harm," which either "causally connected the foreseeability" or was "the substantial factor" in causing the claimed harm. *See* O.R., Amended Complaint, 7/28/21 at 10-11, ¶¶ 25-27. Such assertions fall short of the level of "desire" or "substantial certainty" required to maintain a claim of willful misconduct under Section 8550 of the Tort Claims Act, 42 Pa.C.S. § 8550. *See R.H.S.*, 936 A.2d at 1230 (holding that "[p]laintiff fail[ed] to allege sufficient facts establishing [county employee's] actions constituted a crime or willful misconduct" for purposes of abrogating official immunity under Section 8550 of the Tort Claims Act, 42 Pa.C.S. § 8550, where plaintiff's "averments . . . fail[ed] to allege [defendant] intended to cause" the claimed injury and, "[f]urther,

13

[plaintiff did] not allege [defendant] intended to bring about the complained-of actions"); *King v. Breach*, 540 A.2d 976, 981 (Pa. Cmwlth. 1988) (concluding that defendants retained official immunity notwithstanding plaintiff's allegations of willful misconduct, where the pleadings were "insufficient to support a conclusion that either [defendant] must have believed and known that the [claimed harm] . . . was substantially certain to follow as a result of [the] conduct, so that it would have to be said that [either defendant] intended the result"). Thus, the trial court did not err in dismissing Vasquez's negligence claims.

### C. Intentional Infliction of Emotional Distress

Next, Vasquez argues that Dorta and Houk intentionally inflicted emotional distress upon him, as their outrageous and extreme comments regarding "highly sensitive personal information" led him "to receive a wave of ridicule and harassment" from fellow inmates, thereby causing him to suffer nausea, headaches, nightmares, anxiety, depression, embarrassment and shame. *See* Vasquez's Br. at 35-39. Vasquez alleges that Dorta and Houk were aware that he had been a victim of sexual assault and that their comments "triggered him" and caused him to suffer flashbacks. *Id.* at 36-39. Vasquez asserts that he became suicidal and was prescribed antidepressant medication for several months. *Id.* at 36.

Maintaining a claim for the intentional infliction of emotional distress requires satisfying the following four elements: (1) the alleged conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *Weinstein*, 827 F. Supp. at 1203 (citing *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989) (explaining that the United States Court of Appeals for the Third

14

Circuit distilled the four elements of the tort of the intentional infliction of emotional distress from the Restatement (Second) of Torts). As our Supreme Court has explained:

> The gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor. Section 46(1) of the Restatement (Second) of Torts . . . provides as follows:
>
>> § 46. Outrageous Conduct Causing Severe Emotional Distress
>>
>>> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>>
>> The availability of recovery under section 46 is highly circumscribed. The tortious conduct contemplated by the drafters of section 46 is described in their commentary:
>>
>>> d. *Extreme and outrageous conduct*. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his

15

resentment against the actor, and lead him to exclaim, "Outrageous!"

*Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987) (quoting Restatement (Second) of Torts § 46 comment d (1965)); *see also Weinstein*, 827 F. Supp. at 1203-04 (observing that "Pennsylvania courts have been chary to declare conduct outrageous") (citations and quotation marks omitted). Liability for the intentional infliction of emotional distress

> clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's [sic] feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Kazatsky*, 527 A.2d at 991-92 (quoting Restatement (Second) of Torts § 46 comment d. (1965)).

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ." Restatement (Second) of Torts, § 46 comment h (1965); *see also Kazatsky*, 527 A.2d at 995 (quoting Section 46 comment h). Here, we conclude that the alleged insults and taunts do not rise to the level of extreme and outrageous conduct necessary to support Vasquez's intentional infliction of emotional distress claim. *See Kazatsky*, 527 A.2d at 991-92; *Jones v. Nissenbaum, Rudolph & Seidner*, 368 A.2d 770, 773 (Pa. Super. 1976) (citing Restatement (Second) of Torts § 46, Comment d (1965)) (reasoning, with respect to inadequate claims for intentional

16

infliction of emotional distress, that "[p]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind").[13]  In light of the strict circumscription of conduct rising to the level of "outrageous," *see Kazatsky*, 527 A.2d at 991-92; *Weinstein*, 827 F. Supp. at 1203-04, we conclude that the trial court did not err in dismissing Vasquez's claim.[14]

## D. Slander

Lastly, Vasquez contends that Houk's remarks affected his reputation and deterred others from associating with him, alleging that he "was always at odds with other inmates."  Vasquez's Br. at 42.  Vasquez also maintains the trial court erred in determining that his claim of slander was barred by the doctrine of sovereign immunity, because Houk made the statements with actual malice.  *Id.* at 41 (citing 42 Pa.C.S. § 8550).  Vasquez alternatively asserts that Houk committed slander *per se* by "directly" and "indirectly" referring to him as a "she" or a "faggot" on a regular

---

[13] As explained previously by this Court, for the purposes of an intentional infliction of emotional distress claim,

> [i]ntent has been defined as "[d]esign, resolve, or determination with which [a] person acts. . . . It presupposes knowledge."  Black's Law Dictionary 727 (5th Ed. 1979).  The Restatement (Second) of Torts defines intent to denote that a party "desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965).

*McNeal v. City of Easton*, 598 A.2d 638, 641 (Pa. Cmwlth. 1991).

[14] Vasquez alleged that he directly confronted Houk regarding the complained-of conduct. *See* O.R., Amended Complaint, 7/28/21 at 8, ¶ 18.  Notably, Vasquez filed several grievances describing his complaints with respect to Dorta and Houk and his alleged post-traumatic stress disorder, but those grievances were denied, as set forth above.

17

basis "in the presence of others." *Id.* at 40 (citing *Koldjeski v. Colombo*, 2009 Pa. Dist. & Cnty. Dec. LEXIS 441 (C.P. Pa. 2009)).

> This Court has explained that
>
> > [i]n [an] action for defamation, a plaintiff bears the burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. [Section 8343(a) of the Judicial Code,] 42 Pa.C.S. § 8343(a).
> >
> > A communication is considered defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. "It is not enough that the victim of the [statements] . . . be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society." *Tucker v. Phila. Daily News*, . . . 848 A.2d 113, 124 ([Pa.] 2004).
> >
> > Further, statements alleged to be defamatory must be viewed in context. *Baker v. Lafayette Coll.*, . . . 532 A.2d 399 ([Pa.] 1987).

*Balletta v. Spadoni*, 47 A.3d 183, 196-97 (Pa. Cmwlth. 2012) (citations and footnote omitted).

Here, Vasquez alleged that Houk committed slander by knowingly sharing "false allegations about Vasquez and sexual misconducts," thereby "caus[ing] special harm to Vasquez[']s reputation." O.R., Amended Complaint, 7/28/21 at 11, ¶ 29. Vasquez does not specify the nature of the purportedly "false allegations" concerning "sexual misconducts." *Id.* Read in conjunction with the factual background set forth in his amended complaint, Vasquez's defamation claim

18

is evidently premised on the allegation that Houk falsely accused him of being a homosexual, thereby harming his reputation among fellow inmates. O.R., Amended Complaint, 7/28/21 at 7-8, ¶¶ 15, 17 & 19.[15] Vasquez alleges that Houk's purportedly defamatory statements resulted in ridicule and antagonism from other inmates and, further, that another inmate threatened to sexually assault him. *See* O.R., Amended Complaint, 7/28/21 at 7.

However, Vasquez fails to allege any facts suggesting that Houk's statements, though offensive, were more than mere opinion or name-calling. *See Dawson v. Zayre Dep't Stores*, 499 A.2d 648, 649 (Pa. Super. 1985). Our Supreme Court has explained that the "allegedly libeled party must demonstrate that the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Baker*, 532 A.2d at 402. Further, "[a]lthough offensive to the subject, certain types of communications are not actionable. Generally, a statement that is merely an expression of opinion is not defamatory." *Balletta*, 47 A.3d at 197 (citation omitted); *see also Baker*, 532 A.2d at 402 (holding that "opinion without more does not create a cause of action in libel").

Although Vasquez avers that Houk was aware of his alleged status as a survivor of sexual assault, *see* O.R., Amended Complaint, 7/28/21 at 8, ¶ 19, this allegation does not sufficiently aver that Houk's comments constituted more than mere opinion or name-calling. *See Balletta*, 47 A.3d at 197. "[S]tatements which are merely annoying or embarrassing or 'no more than rhetorical hyperbole' or 'a vigorous epithet' are not defamatory," and "[a] certain amount of vulgar name-

---

[15] Although Vasquez alleges that Houk learned from Dorta that Vasquez had been a victim of sexual assault, *see* O.R., Amended Complaint, 7/28/21 at 8, ¶ 19, Vasquez does not allege that Houk shared that information with other inmates.

19

calling is tolerated, on the theory that it will necessarily be understood to amount to nothing more." *Kryeski*, 626 A.2d at 600-01 ("find[ing] no error in the trial court's conclusion that the alleged statements by one employee to another that appellant was 'crazy' were not defamatory") (citing *Fram v. Yellow Cab Co. of Pittsburgh*, 380 F. Supp. 1314 (W.D. Pa. 1974) (holding that defendant's use of the terms "paranoid" and "schizophrenic" was not defamatory, where plaintiff failed to prove that defendant referenced an actual psychological infliction)).

Further, a plaintiff alleging spoken defamation must plead special harm resulting from the publication of the allegedly defamatory statements. 42 Pa. C.S. § 8343(a)(6). "Special harm" means, specifically, harm of an economic or pecuniary nature; thus, mere loss of reputation is not sufficient to prove special harm. *Bethel v. McAllister Bros. Inc.*, 1993 U.S. Dist. Lexis 4243, *25-26 (E.D. Pa. March 30, 1993); *Agriss v. Roadway Express Inc.*, 483 A.2d 456, 469-70 (Pa. Super. 1984). A plaintiff is relieved of the requirement to plead and prove special harm only where the alleged defamatory statements are defamatory per se because they impute a criminal offense, a loathsome disease, business misconduct, or serious sexual misconduct. *Clemente v. Espinosa*, 749 F. Supp. 672 (E.D. Pa. 1990).

Of these categories of statements that are defamatory per se, only serious sexual misconduct is potentially inferable from Appellees' alleged statements here. However, in *Davitt v. Wood Co.*, 58 Pa. D.&C. 4th 279 (2002), a common pleas court observed:

> To say that the allegations . . . relating to homosexual sexual practices constitute "serious sexual misconduct" would be contrary to today's mores and community sentiment. As the briefs of the parties point out, nearly one-half of the American public believe that homosexuality is an acceptable alternative lifestyle. While the alleged actions were framed in a vulgar manner,

20

it does not raise the underlying content of the statements to "serious sexual misconduct." The United States District Court for the Eastern District of Pennsylvania recognized this fact in deciding the case of *Rhine v. Dick Clark Prod*[*ucts*], 2000 U.S. Dist. Lexis 58 (E.D. Pa. Jan. 1, 2000). That court held that publication of [a] plaintiff's homosexual orientation did not fall within any of the four categories of slander per se. Here, the publication of such alleged orientation, and attendant sexual practices, suffers the same fate.

*Id.* at 291-92. We find that court's analysis persuasive here and conclude that Vasquez has not alleged either defamation per se or special damages. Accordingly, his defamation claim cannot survive.

Thus, we conclude that the trial court did not err in dismissing Vasquez's defamation claim. *See Balletta*, 47 A.3d at 197 ("discern[ing] no error in the trial court's gatekeeper determination that [defendant's] statements were not actionable," explaining that "[u]nder Pennsylvania law, courts act as gatekeepers to determine whether statements are incapable of defamatory meaning in deciding whether any basis exists to proceed to trial").

### III. Conclusion

Accordingly, for the foregoing reasons, we affirm the trial court's decision.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ramon Vasquez, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CO Dorta, CO Houk, Treatment | : | No. 1468 C.D. 2021 |
| Counselor Brenna, and Jessica Collins | : | |


**PER CURIAM**               O R D E R


AND NOW, this 11th day of April, 2023, the November 22, 2021 order of the Berks County Court of Common Pleas is AFFIRMED.